CHARLES E. QUINCEY, Respondent, v. STEPHEN V. WHITE, impleaded, etc., Appellant.

A member of the stock board, in the city of New York, against whom a claim is made by another member of the board for a deficiency arising upon a sale of stock under the rule, and who, upon being cited to appear before the arbitration committee of said board, pays the claim with full knowledge of all the facts, cannot maintain an action to recover it back. Fear of the said committee is not duress; the payment is voluntary, and all controversy as to the stock, upon such payment, is ended.

One selling stock, under the rule, has a right to purchase himself.

*It seems,* that to give to an account delivered the force of an account stated, because of silence on the part of the party receiving it, the circumstances must be such as to justify an inference of assent, upon his part, to its correctness. Where he has disclaimed all liability upon the account, he is not bound to examine the items, upon its delivery to him, and his omission to object will not be taken as an admission of their correctness and is not *prima facie* proof of the account.

In an action against several persons upon an account arising from stock transactions, claimed by plaintiff to have been joint transactions on the part of defendants, but claimed by one of the defendants to have been several, *held,* that evidence that said defendant had a private account running at the same time was competent as a circumstance tending to show that the other account was joint and not several.

Where evidence is competent for any purpose it is not error to receive it, although a wrong reason is alleged.

Where, therefore, after evidence had been given in said action tending to prove an agreement on the part of plaintiff's partner, that the firm would assume a portion of the stock, plaintiff was permitted to testify, under objection, that he did not assent to, and knew nothing of the alleged transaction, which evidence was offered for the avowed purpose of showing that from the nature of the business of plaintiff's firm his partner could not bind him to such an agreement; *held,* that although the evidence was incompetent for the purpose offered, yet as it was competent to contradict defendant's evidence, its reception was not error.

An order refusing to send a case back to a referee to find in respect to a request to find made to him, is not error, when the circumstance, if found as requested, taken in connection with the other findings, would not change or materially affect the conclusion arrived at by the referee.

It is not *per se* unlawful for several persons to unite either in a general business or upon a special venture of dealing in stocks or in a particular stock.

*Quincey* v. *Young et al.* (5 Daly, 32) reversed unless corrected.

(Argued February 24, 1875; decided December 14, 1875.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 5 Daly, 327; *sub nomine Quincey* v. *Young et al.*)

This action was brought to recover balance alleged to be due upon an account of certain stock transactions conducted by plaintiff's firm, William Heath & Co., on joint account of defendants. The facts sufficiently appear in the opinion.

*Edwards Pierrepont* for the appellant. The finding of a fact essential to the maintenance of the judgment, without any evidence to support it, is an error of law. (*Grant* v. *Morse*, 22 N. Y., 323; *Davis* v. *Spencer*, 24 id., 386; *Brush* v. *Lee*, 36 id., 49–52; *Draper* v. *Stouvenal*, 38 id., 219–223; *Fellows* v. *Northrup*, 39 id., 117; *Ostrander* v. *Fellows*, id., 350; *Mason* v. *Lord*, 40 id., 477–484; *Wegman* v. *Childs*, 41 id., 159; *Putnam* v. *Hubbell*, 42 id., 106–113; *Burgess* v. *Simonson*, 45 id., 225; *Matthews* v. *Coe*, 49 id., 57–60; *Sheldon* v. *Sheldon*, 51 id., 354; *Getty* v. *Devlin*, 54 id., 403–416.) The account was not an account stated. (*Lockwood* v. *Thorne*, 18 N. Y., 292; *Stenton* v. *Jerome*, 54 id., 480–484; *Cartwright* v. *Green*, 47 Barb., 9–17.) The combination between plaintiff and defendants was not lawful. (2 Kent's Com., 466; 2 Pars. on Cont. [5th ed.], 746, 747; *Foote* v. *Emerson*, 10 Vt., 338; *Dixon* v. *Olmstead*, 9 id., 310; *Seeback* v. *Potts*, 7 East, 449; *Shiffner* v. *Gordon*, 12 id., 304; *Howson* v. *Hancock*, 8 T. R., 577; *Belding* v. *Pitkin*, 2 Cai., 149; *Springfield Bk.* v. *Merrick*, 14 Mass., 322; *Russell* v. *De Grand*, 15 id., 39; *Wheeler* v. *Russell*, 17 id., 281; *White* v. *Franklin Bk.*, 22 Pick., 181; *Spaulding* v. *Preston*, 21 Vt., 1; *Gay* v. *Hook*, 4 N. Y., 449; *Bell* v. *Legett*, 7 id., 176; *Ellis* v. *Clark*, 4 Hill, 424; *Barton* v. *Pt. J. R. R. Co.*, 17 Barb., 397; *Rose* v. *Knox*, 21 id., 301; *Moseley* v. *Moseley*, 15 N. Y., 334; *Brisbane* v. *Adams*, 3 id., 129; *Jones* v. *Caswell*, 3 J. Cas., 29; *Thompson* v. *Davies*, 13 J. R., 112; *Doolin* v. *Ward*, 6 id., 194; *Hooker* v. *Vandewater*, 4 Den., 349; *Stanton* v. *Allen*, 5 id., 434; *Satterlee* v. *Jones*, 3 Duer, 102; *Davi-*

*son* v. *Seymour*, 1 Bosw., 88.) The appellant is entitled, upon request, in a cause tried before a referee, to a finding one way or the other upon every question of fact involved in the determination of any material issue contested at the trial. (Sup. Ct. rule 41; *Johnson* v. *Whitlock*, 13 N. Y., 349; *Priest* v. *Price*, 3 Keyes, 224; *Cashler* v. *Shipman*, 35 N. Y., 542; *Colwell* v. *Lawrence*, 38 id., 71; *Van Slyke* v. *Hyatt*, 46 id., 259; *Meacham* v. *Burke*, 54 id., 217; *Grant* v. *Morse*, 22 id., 324; *Carman* v. *Pultz*, 21 id., 547–551; *Macy* v. *Wheeler*, 30 id., 237; *McCabe* v. *Brayton*, 38 id., 196; *Tomlinson* v. *Mayor, etc.*, 44 id., 603; *Burgiss* v. *Simonson*, 45 id., 228; *Finch* v. *Parker*, 49 id., 8; *Smith* v. *Ætna L. Ins. Co.*, id., 211–216; *Smith* v. *Coe*, 29 id., 670, 671; *Meyer* v. *Amidon*, 45 id., 172.) A creditor of a partnership may part with or waive the joint liability of all or any of his debtors, and it is not necessary that an agreement to do so should be supported by a consideration of any higher order than would be sufficient to uphold any other ordinary agreement. (Story on Part., 252–254; Gow. on Part. [3d ed.], chap. 3, § 1, pp. 129, 130; Collyer on Part. [2d ed.], bk. 3, chap. 5, § 1, p. 467; Watson on Part. [2d ed.], chap. 8, p. 420; *Garret* v. *Taylor*, 1 Esp. N. P. Dig., 117; *Kirkham* v. *Newstead*, id., 118; *Le Page* v. *McCrea*, 1 Wend., 164–171; *Waydell* v. *Luer*, 3 Den., 410; *Millard* v. *Thorne*, Alb. L. J., Jan. 16, 1875, p. 44; *Elwood* v. *Diefendorf*, 5 Barb., 598–408; *Cole* v. *Sackett*, 1 Hill, 516; *Livingston* v. *Radcliff*, 6 Barb., 201; *Van Eps* v. *Dillaye*, id., 244–252; *Lyth* v. *Ault*, 7 Exch., 669; 11 E. L. and Eq., 580; *Thompson* v. *Percival*, 5 B. & Ad., 925; *Hart* v. *Alexander*, 2 M. & W., 484; 1 Pars. on Cont., 438, 439; *Ex parte Lucy*, 21 E. L. and Eq., 199; *Mills* v. *Lee*, 6 Mon., 91; *Moore* v. *Fitzwater*, 2 Rand., 442; *Bennett* v. *Paine*, 5 Watts, 259; *Pierson* v. *McCahill*, 21 Col., 122; *Seaman* v. *Seaman*, 12 Wend., 381; *Stewart* v. *Ahrenfeldt*, 4 Den., 189, 190; *Russell* v. *Cook*, 3 Hill, 504; *Palmerston* v. *Huxford*, 4 Den., 166, 167; *Palmer* v. *North*, 35 Barb., 282–293; *Morton* v. *Ostram*, 33 id., 256–262; *Farmers' Bk.* v. *Blair*, 44 id., 641–652; Powell on Cont., 356; Comyn on Cont., 12, note 13.) A man

Opinion of the Court, per CHURCH, Ch. J.

having reaped all the substantial advantages of an agreement in which he has apparently acquiesced, cannot escape his obligation by saying that though he appeared to he did not assent, and meant to repudiate it as soon as he could safely. (*Dezell* v. *Odell*, 3 Hill, 215; *Thorn* v. *Bell*, H. & D. Sup., 430; *Welland Canal Co.* v. *Hathaway*, 8 Wend., 480–483; *Plumb* v. *Cat. Co. Ins. Co.*, 18 N. Y., 392; *Brown* v. *Bowen*, 30 id., 519–541.) The acquiescence need not be express but may be implied from circumstances. (Pars. on Part., 423; *Hart* v. *Alexander*, 2 M. & W., 484; *Harris* v. *Lindsay*, 4 Wash., 98; *Deland* v. *Amesbury Man. Co.*, 7 Pick., 244.) Defendant is entitled to a new trial. (*Grant* v. *Morse*, 22 N. Y., 325; *Mason* v. *Lord*, 40 id., 476–484; *Putnam* v. *Hubbell*, 42 id., 113; *Beck* v. *Sheldon*, 48 id., 365–369; *Marvin* v. *Inglis*, 39 How. Pr., 353.) It was improper to receive evidence that Woodward opened a private account with plaintiff's house about the time Woodward & Young's joint account was closed; it was irrelevant. (*Erbin* v. *Lorillard*, 19 N. J., 302.)

*Aug. F. Smith* for the respondent. The declarations of Young were admissible in evidence against himself. (*Button* v. *McCauley*, 5 Abb. Pr. [N. S.], 29.) The testimony of Quincey, as to the effect of the transfer of Young's Reading stock to the joint account was properly admitted. (*People* v. *Gonzales*, 35 N. Y., 59; *Vandervoort* v. *Gould*, 36 id., 644.) Heath's evidence, as to who bought the stock sold under the rule, was admissible. (*Wheeler* v. *Newbold*, 16 N. Y., 399.)

CHURCH, Ch. J. This action was brought to recover a balance of account claimed to be due to William Heath & Co., of which firm the plaintiff was a member, and now holds the account by assignment. The action was originally brought against White, and two others (Woodward and Young), but White only has appealed to this court. The parties are all stock-brokers, and the controversy grew out of stock speculations. In the spring of 1870, Woodward and Young entered into an arrangement to deal in Philadelphia

and Reading Railroad stock with Heath & Co. as brokers. Soon after the defendant White joined the enterprise, and the business continued until the fifteenth of July, at which time the stock was very much depressed, and a heavy loss seemed imminent, and Young announced his inability to respond to calls for margin. White and Woodward each took and paid for one-third of the stock then in the "pool," which amounted to over 80,000 shares, and the sum claimed in this action is substantially for losses incurred in closing out the other third. The defence was, that there was not a joint but only a several liability. The defendants claimed that by the original arrangement between Woodward and Young, and Heath & Co., the former were to be liable only for their respective shares, which arrangement was unchanged when White went in; and they also claimed that on the fifteenth of July, when Young failed, and a dispute arose as to the extent of the liability of the parties, that the matters were compromised by an arrangement that White and Woodward should each take and pay for one-third of the stock; that Heath & Co. were to assume the responsibility of one-third, being Young's share, and that White and Woodward were to assist them in carrying it by loaning money to Heath & Co., and manipulating the stock by selling and buying, so as, if possible, to avoid loss; that this arrangement was carried out on the part of Woodward and White until the twenty-third of July, when Heath & Co. gave written notice that they should hold them jointly liable for the whole account. On the part of the plaintiff the alleged original arrangement for a several liability was denied, and also that of the fifteenth of July, as claimed by the defendants; and it was claimed that the arrangement at that time was, that the plaintiff only agreed to carry one-third of the stock until it fell to ninety-five, when the defendants were to take and pay for it. As to these questions of fact there was a serious and very sharp conflict of evidence, and I infer, from the opinion of the learned referee, that he found some difficulty in arriving at a satisfactory conclusion. The General Term, having full

power to review the questions of fact, affirmed the decision of the referee, which was in favor of the plaintiff upon both points. Upon the receipt of the notice of the twenty-third of July, the defendant White proceeded, after notice, to sell, at the public board, 7,100 shares of the Young stock, upon which he had loaned to Heath & Co. ninety-five per cent of the par value, and upon such sale he purchased in the stock, leaving a deficiency of $5,380, which he claimed of Heath & Co., and cited them before the arbitration committee of the board, but before the day to which the hearing was adjourned they paid to White that amount, which was allowed to the plaintiff, and is included in the judgment. Heath & Co. also sold, at the board, the remaining stock in their hands, and made up a joint account against the parties, which was delivered on the twenty-eighth of July, showing a large balance, for which the plaintiff recovered.

We have no power to review questions of fact. As to such questions the findings of the referee, affirmed by the General Term, are conclusive upon this court.

The allowance of the above sum of $5,380 is claimed to present a question of law, and, therefore, reviewable. The finding of the referee describes the payment as "a balance claimed by and due to said White on account of a loan made by him to said firm on stock of said joint account, which stock he had sold out under said rule, and bought in with the concurrence of said Woodward on such sale." There is an additional finding tending to identify the sum with the transaction as claimed by the defendant White. It is undisputed that White loaned money to Heath & Co. upon 7,100 shares after the fifteenth of July, and that they were a part of the stock remaining in the hands of Heath & Co. after White and Woodward had taken and paid for two-thirds. It is undisputed also that the proceeding on the part of White in selling was in accordance with the rules of the board, and was in the nature of a foreclosure, and the balance was the deficiency which he claimed against Heath & Co., based upon his version of the agreement of the fifteenth of July. The

payment was unqualified, with a full knowledge of the claim, and must, I think, be regarded as a voluntary payment in satisfaction of such claim. There was neither duress of person or property. Fear of the arbitration committee was not sufficient. Threat of a distress for rent is not duress (1 Esp. R., 48); nor of legal process. (Id., 279.) A party who has paid money voluntarily, under a claim of right, cannot recover it back although he paid it under protest. (12 Pick., 7, 13.)

It is urged that this payment may be regarded as a payment of a portion of the loan, and it is argued that if the plaintiff had paid the whole loan he could have recovered it. He might, in that case, have treated the stock as undisposed of, and made up his account accordingly. That would have been consistent with the arrangement between the parties as claimed by the plaintiff. Not so with this payment. The defendant White had instituted legal proceedings to foreclose his lien against Heath & Co., as upon a loan to them, and upon the sale a deficiency was produced, which he demanded as a legal right. He had changed the nature of the demand from that of a loan to a deficiency, and by paying it Heath & Co. voluntarily assented to the propriety of his claim, and cannot now retract. According to well settled principles, when they paid it the controversy as to that stock was ended. It must be assumed that a person selling stock under the rule (as it is called), has a right to purchase himself. The object is to foreclose the claim of the mortgagor or pledgor, and in analogy to other similar cases, the pledgee or mortgagee may become the purchaser. The circumstance that White became the purchaser does not affect the point under consideration. He demanded of Heath & Co., as a right, this sum, and with full knowledge of all the facts they paid it, and the judgment, to that extent, cannot be sustained.

Another point, and perhaps the most serious one, is whether the thirteenth finding can be sustained. It is as follows: " That after crediting said defendants with all the proceeds of said stock, and with all other credits to which they are entitled, there remained, on the 27th day of July, 1870, a

balance of $104,138.39 due from defendants to said firm. That on or about said twenty-seventh day of July the said firm rendered to said defendants an account showing said balance; that the same was duly accepted and approved by said defendants, except that they claimed that they were not jointly liable thereon; a copy of which account is annexed to the complaint, marked ' C.' "

There is no evidence and no pretence that the defendants expressly approved or assented to the account of the twenty-seventh of July. It can only have the force of an account stated by the inference to be drawn from silence of an admission of its correctness. An account stated is an admission of the correctness of the account. The weight of this kind of admission depends upon circumstances. If both parties personally examine an account and assent to its correctness, it furnishes very clear evidence of the fact. If an account is delivered to a party, and he makes no objection to it for a period sufficient to enable him to do so, it may be inferred that he assented to its correctness, and it would *prima facie* prove the account. The force and character of an account stated are well expressed in *Lockwood* v. *Thorne* (18 N. Y., 285). The rule is not an arbitrary or artificial one. It is based upon the ordinary conduct of men in protecting their own interests. If a charge is made against a person, or an assertion of indebtedness, under such circumstances that if not true such person would naturally deny it, the inference may be drawn that, by not denying he assented to it. This species of proof, that is an inference from silence, is, of course, far from conclusive, and not always very satisfactory, but it is sufficient often, in the absence of contradictory evidence, to establish the fact sought to be proved. There must be enough shown, however, to justify an inference of assent in order to make it *prima facie* proof. In this case the question is, whether the circumstances shown to have existed on the twenty-eighth of July, when the account of the twenty-seventh was delivered (which circumstances are undisputed), were sufficient to authorize an inference that the defendants

assented to the correctness of the items of the account; or were the defendants called upon, in order to prevent such inference, to say any thing in respect to such items.

On the fifteenth of July, Young failed, and the dispute arose as to whether Woodward and White were jointly or severally liable, which was compromised, as Woodward and White claimed, on the several liability principle, and by Heath & Co.'s assuming Young's share. The business was conducted, consistently at least with their claim, until the twenty-third of July, when Heath & Co. gave notice that they should insist that the account was joint. Both parties immediately proceeded to adopt measures to assert and protect their legal rights; and before the twenty-eighth, when this account was delivered, both parties had sold stock, under the rule, at the public board in order to close up the transactions, according to their respective views of their positions; and each had cited the other to appear before the arbitration committee, a tribunal created by the laws of the association, to which both parties belonged, as I infer, to adjudicate such controversies between members; and the twenty-ninth July was the day fixed for the parties to appear. This account was made up on the theory of Heath & Co., and ignored entirely the arrangement claimed by the defendants, of the fifteenth of July. The notice of the twenty-third, the notice of each party to sell under the rule, the respective sales, the demand of White for a deficiency, were all of the same character — they were preliminary steps in preparation for a litigation. Has the account of the twenty-seventh any greater force? The defendants had insisted upon a several liability since the fifteenth of July; and, after the notice of the twenty-third by Heath & Co., had repeatedly, by acts and words, denied a joint liability, and each had cited the other before a legal tribunal created by themselves. It seems to me that when the account was presented, on the twenty-eighth, to White and Woodward they were not called upon to say any thing; and, by omitting to object, that no inference can be fairly drawn of assent or

approval of the items of the account. Their position was, that they were not liable for any account, claiming that they had satisfied all liability by each taking and paying for one-third of the stock, and had given notice to Heath & Co., and had carried out their views in every possible way by their acts. When, for some independent reason, a person disclaims all liability, he is not bound to examine the items, or be taken to have assented to them, if he does not object. In such a case he puts himself upon higher ground. He says, in effect, I have nothing to do with this account, and I deny all liability for any thing. If he fails in maintaining the position he has assumed, it cannot be said that he admitted the correctness of all the items, for the simple reason that his silence as to them is not inconsistent with his subsequent denial. These parties were belligerents in respect to this transaction at that time. Each was engaged in fortifying his position, and the account of the twenty-seventh was a formal announcement on the part of Heath & Co., of their claim. The finding is, that the defendants denied their joint liability, and there is no evidence of express assent or approval, and no evidence which would justify such an inference. But if there is any evidence to sustain the first part of the thirteenth finding, that there was due the plaintiffs upon the account the amount for which the judgment was rendered, the error in finding an account stated is not material.

I have examined the evidence for that purpose, and I am inclined to the opinion that there is sufficient *prima facie* to sustain that part of the finding. Aside from the proof of various transactions out of which many of the items originated, and the proof of other items, specifically, the plaintiff testified generally to the correctness of the several accounts put in evidence, including that of the twenty-seventh of July. It was argued that this evidence referred to the entries in a book, as to which the plaintiff had just previously been examined, but I infer that he intended to testify to the general correctness of the several accounts from his personal knowledge of the several items of which they were composed.

The evidence is not conclusive and not very positive, but within the rule applicable to findings of fact by a referee, it must be regarded as sufficient.

A point is made, that the referee erred in permitting the question: "What would be the effect of the transfer of 30,300 shares to the joint account?" It was undisputed that these shares, standing in Young's private account, were transferred to the pool. The alleged objection to the question is, that it calls for an opinion. The form of the question was not objected to, and the answer of the witness to this and the other questions immediately following shows that it aimed at proving that this stock was put in below the market rate. It is difficult to discover any relevancy to the question, or how it could possibly have produced any harm, because the price at which the stock was put in was immaterial. The evidence called for and obtained was, that putting into the pool stock at less than the market rate would benefit the pool; which was a self-evident proposition, not depending upon opinion but upon mathematics.

The fact that Woodward had a private account running at the same time the pool account was running, was not objectionable, as a circumstance showing the manner in which all the parties carried on their stock transactions, and tended, perhaps, though slightly, to prove that the pool account was joint and not several. It is often permissible to prove facts and circumstances as a part of the history of the case and to show the relation of the parties to the principal transaction. These circumstances may serve to explain the conduct of the parties, and thus throw light upon the real nature of the controverted facts. We cannot say that the fact that Woodward had a private account was so irrelevant as to render its admission error.

Error is also alleged in admitting the evidence of the plaintiff, Quincey, that he did not, on the fifteenth of July, know of or at any time assent to an arrangement that Heath & Co. should stand in the shoes of Young, bearing his losses and taking his profits, and that he didn't hear of it until the

day before the stock was sold out under the rule. This evidence was offered, as avowed, to prove that Heath & Co. were mere brokers and not speculators. If the evidence was competent for any purpose it was not error to receive it, although a wrong reason was alleged. The evidence would scarcely tend to show that the arrangement as claimed by the defendants, was so foreign to the business of the firm as that it would not bind the plaintiff, Quincey. There is, doubtless, a distinction between a stock-broker and a speculator in stocks; but that the arrangement claimed by the defendants was outside of the business of Heath & Co. as stock-brokers, cannot be affirmed. If they may manipulate a pool for professed stock speculators, they may do so upon such terms as may be agreed upon. It would be legitimate to do so upon the several liability of the parties; and in case of misfortune of one of the parties they could assume any liability which the circumstances imposed; and the arrangement claimed in this case, upon a dispute as to the liability of the parties, would be clearly within their legitimate business. The evidence, however, I think was competent, as tending to contradict the statement of the defendant White, that on the fifteenth of July, when the arrangement was made, the terms of which constituted the principal contention between the parties on the trial, upon his making a sharp proposition to Heath, and requiring an answer, Heath talked with the plaintiff, Quincey, who was present, and then said: "I suppose we can do that." From this it might be argued that Quincey not only knew of but assented to the proposition; and the evidence admitted would tend to rebut such inference. The distinction between the arrangement specified in the question and that claimed by the defendant was not very material in this connection, but if essentially different the answer would be less injurious to the defendant.

It is also claimed that the order refusing to send the case back to the referee to find in respect to certain requests made by the defendants should be reversed, and the case sent back for that purpose. I have examined the numerous requests

made, as to which the referee declined to make any finding, and nearly all of them are items of evidence only, which would not vary the result, or are immaterial. The request which was deemed by the counsel the most important was that which required the referee to find the making and delivery of the account of the nineteenth of July, which exhibited the division of the stock into thirds, White and Woodward each taking one-third, and Heath & Co. retaining one-third. The referee finds the fact that White and Woodward did, on the eighteenth of July, each take and pay for one-third of the stock, but he finds that the other third was retained by Heath & Co. for the joint account of the defendants, under the arrangement made on the fifteenth of July, as claimed by Heath & Co. It cannot be said but that the account of the nineteenth, showing the division and delivery of the stock, and its payment, was consistent with either version of the agreement of the fifteenth of July. Both parties concurred that White and Woodward were each to take and pay for one-third, and they differed only as to the terms upon which the remaining third was to be retained by Heath & Co. Either version would render it proper to make up and deliver the account of the nineteenth, and that such account was delivered was undisputed; but the finding of that circumstance, in connection with the other findings, would not change the conclusions arrived at, nor have any material bearing upon it. The general rule is, that facts are to be found, and not evidence. At most, it would only furnish an item of evidence that the transaction, so far as the liability of the defendants was concerned, was closed, but it would not be conclusive, and would not establish, as a matter of law, that the remaining one-third was retained by Heath & Co. on their own account. A refusal to find upon the question, shows that the referee regarded it as immaterial, as it is, if the other findings are to be taken as true. We do not deem it material to notice in detail the other refusals to find facts, they are all embraced in the general findings of the referee, or are immaterial. It is also urged that

the agreement between the parties was against public policy, and therefore void. The answer to this is, that there are no findings and no exception which present the question. It is not *per se* unlawful for three persons to unite either in a general business, or upon a special venture of dealing in stocks or a particular stock, any more than for one person to do so; and the substance of the findings on that point is, that these persons agreed to deal in a particular stock on speculation. This is not unlawful as against public policy. It is unnecessary to consider whether a combination might not be made to produce results which would not be sustained, nor now to define the nature of such a combination, nor the means which might be deemed unlawful in carrying it out. There is no such point properly presented by the findings. On the whole, regarding, as we must, the findings of fact conclusive, we feel constrained to affirm the judgment, except as to the sum of $5,380 and interest paid by Heath & Co. to White for a deficiency in the sale of stock at the public board.

The judgment must be reversed and a new trial granted, unless the plaintiff stipulates to deduct from the judgment the said sum of $5,380, and interest, in which case the judgment must be affirmed as to the residue, without costs to either party, as against the other, in this court.

All concur; EARL, J., not sitting.

Judgment accordingly.