THOMAS C. CLARK, Appellant, *against* THE MECHANICS' NATIONAL BANK OF THE CITY OF NEW YORK, Respondent.

·(Decided December 4th, 1882.)

As between a bank and a depositor with it, the entry of debits in the depositor's pass-book and striking a balance thereon constitute a statement of the account, and the delivery of the book to the depositor and his retention of it without objection, make it a stated account; and where the book has been retained many months without objection, and the precise balance it exhibits has been drawn out, these facts afford clear evidence of a settled, as well as a stated account, which establishes *prima facie* the accuracy of the items.

In an action against a bank to recover an alleged balance of deposits made by plaintiff remaining after payment of his drafts, the sum claimed was the aggregate of the amounts of twenty-three checks paid by the bank and charged by it against plaintiff in his pass-book, but which it failed to produce as vouchers. At the trial, plaintiff, while not absolutely denying that he drew the checks in question, testified, as to all of them, that the amounts were amounts for which he never drew them; but the jury, upon evidence on behalf of the bank tending strongly to prove that plaintiff did draw seven of the missing checks for the amounts thereupon respectively paid and charged by the bank, disallowed those seven checks, and found a verdict for plaintiff for the amount of the other sixteen checks only. *Held*, that the jury, having disbelieved the testimony of plaintiff as to the seven checks, which, if false, must be willfully false, were bound to discredit his testimony altogether, it being unsupported by any other witness or fact; and as the verdict was founded wholly upon his unsupported testimony, a new trial should be granted.

*It seems*, that if plaintiff's claim was that the checks to which he objected, and which he did not deny that he drew, had been raised or altered, the burden rested upon him to prove that fact.

APPEAL from a judgment of this court entered on the verdict of a jury, and from an order denying a motion for a new trial.

The action was brought to recover the sum of $27,149.70, which plaintiff, a depositor with defendant, claimed to be due him, over and above his drafts on his deposits. The sum in question was the aggregate of twenty-three checks charged against him in balancing his pass-book on Septem-

ber 14th, 1865. On the first trial of this case the jury gave a verdict for the whole amount of his claim. The verdict was set aside on the minutes; plaintiff appealed, and the General Term affirmed the order on the ground that the verdict was "so against a striking preponderance of the evidence, that a common exercise of judgment demands its reversal," and that it was "impossible to account for the verdict of the jury except upon the ground of bias against the defendant as a banking institution upon some such assumption as that, being a bank, they should be held responsible for this large amount if they could not produce the original vouchers to show that they had paid it (8 Daly 481, 504, 508).

The second trial resulted in a verdict for plaintiff for $17,381.44, being $9,768.46 less than the verdict of the first jury. The difference is the aggregate of seven of the disputed checks, which the jury apparently deemed to be genuine checks, both as to signature and amount. Upon the coming in of the verdict defendant made a motion for a new trial upon the minutes, which motion was denied, and judgment for plaintiff was entered on the verdict. From the judgment and the order denying a new trial defendant appealed.

*William H. Scott*, for appellant.

*William A. Beach*, for respondent.

J. F. DALY, J.—The facts of the case were fully set forth in the opinions reported in 8 Daly 481, the evidence taken on the first trial having been read to the jury on the second trial, and some additional testimony offered concerning specific vouchers among the number disputed. On the first trial the bank proved conclusively that two of the checks denied by plaintiff were issued by him, and gave evidence of a similar circumstantial character, though not so strong, concerning three others. The jury gave plaintiff a verdict including the amount of those five checks upon

some theory or view of the case which the General Term condemned. Upon the second trial the jury disallowed those five checks and two more, one for $119.46 and one for $7000, and gave plaintiff a verdict for the other missing vouchers. The plaintiff swore as positively against the genuineness of the seven disallowed checks, as against the other sixteen, but the jury seems to have thought it a matter of no moment. They gave a verdict for $17,381.44 against defendant upon the unsupported testimony of a witness whose positive oath they disbelieved. The plaintiff's claim for the amounts they allowed rested upon the same proof as his claim for what they disallowed. The question whether plaintiff was worthy of belief did not seem to enter into their deliberations; the sole question seemed to be whether the bank had been successful in unearthing business transactions of the plaintiff in the course of which he might have paid out any of these disputed vouchers.

My view of the law of the case is that the jury having found that the plaintiff had testified falsely as to seven of the missing checks were bound to discredit his testimony altogether, it being unsupported by any other witness or fact. His testimony as to those seven checks if false was willfully false, because he could not have been mistaken as to the question whether he drew for those amounts. He swore positively, and was convicted by the verdict of positive falsehood.

The jury finding plaintiff unworthy of belief on these seven material facts, and being in consequence bound to reject his unsupported oath as to every other matter in controversy, should have rendered a verdict for defendant for these reasons. The bank had proved *prima facie* a stated and settled account between him and itself. The entry of debits in the pass-book and striking a balance thereon is a statement of the account, and the delivery of the book to the dealer and his retention of it without objection makes it a stated account (*Weisser* v. *Denison*, 10 N. Y. 81; *Harley* v. *Eleventh Ward Bank*, 76 N. Y. 618). An account settled is one where the balance it exhibits has been paid or

adjusted between the parties.    Where it has been retained
many months without objection and the precise balance it
exhibits has been drawn out, the fact affords clear evidence
of a settled as well as a stated account.    An account settled
or stated establishes *prima facie* the accuracy of the items
(*Lockwood* v. *Thorne*, 18 N. Y. 292).    The affirmative is, of
course, on the party alleging a stated or settled account and
relying upon it as proof of the correctness of the items, to
show not only that the account has been delivered and
retained by the other party, but retained without objection,
or to show such circumstances as justify an inference of his
assent to it (*Stenton* v. *Jerome*, 54 N. Y. 480 ; *Quincey* v.
*White*, 63 N. Y. 377).    The plaintiff's pass book, which he
produced on the trial to charge the defendant, showed that
the disputed vouchers were charged against him in the
statement of September 14th, 1865, and a balance struck on
the basis of such charge of $2,151.49; that subsequent to
that date and down to June 29th, 1874, the book had been
balanced twenty-three times on the basis of the balance of
$2,151.49 of September 14th, 1865, and that said balance then
struck had been drawn out and used by plaintiff, for on
June 29th, 1874, his last statement showed a balance of 83
cents.    Those twenty-three balances of the pass-book were
so many repeated affirmances of the correctness of the bal-
ance and account on which they were based, and afforded
ground for inferring that plaintiff had acquiesced therein, as
he did not make a formal demand for the money until 1875,
ten years after the disputed charges were made.    Plaintiff
was, of course, entitled to show that he had not acquiesced
in this account of September 14th, 1865, but had disputed
it, and he did swear to repeated interviews from that date
down to 1874 with the bookkeeper of the bank and the
president (who died before this action was tried), in which
he objected to the missing vouchers and claimed a larger
balance.    The bookkeeper denied this, and the sole evidence
to show that defendant dissented from the correctness of
the accounts that had been balanced twenty-three times on
the same basis, was his own unsupported oath.    This oath

the jury were bound to reject because he was unworthy of credit, and to render a verdict for defendant on the ground that the accounts between the parties had been settled and were unimpeached for mistake or fraud.

The case shows another ground for reversing this judgment and ordering a new trial. When plaintiff gave his evidence it appeared that he did not deny drawing the checks which appeared in the pass-book he produced, but claimed that they were not the amounts for which he had drawn. His whole testimony on that point is as follows: " Q. Will you turn to the account commencing July 11th, 1864, with a balance of $394.47? A. Yes, sir; I see it. Q. Now the figures on the right hand page. A. Well, the debit side. Q. It contains the checks which have been charged to you? A. Yes, it contains the amounts. Q. The first twenty-three there—are those the checks which you claim were fraudulently entered by this bank? Are those the charges which you claim were fraudulent? A. The amounts are amounts for which I never drew them." This testimony was regarded by the General Term of this court as not constituting a denial on plaintiff's part that he drew the checks. " The plaintiff does not swear that he did not draw these missing checks, his testimony being that the amounts are amounts for which he never drew them, leaving the inference that some unknown person had fraudulently altered them, for he avoids distinctly swearing that he did not draw the checks, which is subject to the suspicion suggested by the respondent that his testimony was guarded in this respect to avoid the hazard he might incur if the checks or some of them should be found and shown to be in his handwriting " (8 Daly 506).

The testimony on the second trial was identical with that quoted above, for the printed testimony on the first appeal was read to the jury. The plaintiff, holding in his hand the statement of account which had been rendered to him, i. e. the pass-book, charging him with these twenty-three vouchers, and being cross-examined as to their correctness, put his objection to them on the sole ground that they were

not the amounts for which *he drew them*, and having by that answer admitted that he had drawn them, defendants were relieved from the necessity of proving that the twenty-three missing checks were signed by plaintiff—there being no claim that he did not draw twenty-three missing checks—and were bound only to show that the respective amounts of those checks were correctly entered and charged. If plaintiff's claim was that the checks had been *raised or altered*, the burden was upon him to prove that fact. Defendant did show by the uncontradicted evidence of the bookkeeper and other clerks of the bank (whose testimony on that point is fully set forth in the report of this case above referred to), and by the books of the bank, that the amounts charged in plaintiff's pass-book were the respective amounts of the twenty-three missing checks signed Thomas C. Clark, which came in the regular course of business between July 14th and October 19th, 1864, through the Clearing House from other banks and over the counter, and were entered and charged as they came. It was for the plaintiff then to show that the checks had been altered, if that was his claim. He might have done so by simply showing the amounts for which he had actually drawn. In this he completely failed. He had nothing to show the fact—not even recollection as to what checks he had drawn during the period of time that the disputed vouchers came to the bank, viz. from July 14th to October 19th, 1864. He admitted that he drew checks during that period, and it was an established fact in the case that no checks of his except the missing checks came to the bank during that period. Instead of showing what checks he drew he professes to be wholly unable to say what they were or to whom they were given. There was no testimony whatever to show that any check had been altered, and as the plaintiff's own evidence brought the case to that issue and he had the affirmative of it, a verdict should have been ordered for defendant. There was no request to that effect, nor does any exception of defendant bring up the question, but on appeal from an order denying a motion for a new trial on

the minutes "where, as in this case, there is a well founded reason for believing that justice has not been done and that the verdict was rendered upon incompetent testimony, it is just and proper for the court to interpose its authority and grant relief" (*Maier* v. *Homan*, 4 Daly 168).

The judgment should be reversed and a new trial ordered, with costs to defendant to abide the event.

VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, with costs to defendant to abide event.