Brady, P. J.
The plaintiffs during the years 1883 and 1884 were stock brokers engaged in the purchase and sale of stocks and other securities upon commission, in the city of New York. The defendant was a resident of BaUston Spa, in this state. The complaint alleged the employment of the plaintiffs as brokers to make purchases and sales of stock on his account and at his risk; the advancement of nioneys for that purpose and consequent purchases, and the earning of commissions, which upon a closing of the account rendered showed a balance due them over and above all sums for which he was entitled to credit.
It appeared on the trial that from time to time statements were rendered showing the transactions, and that no objection was made to them or any of them. The complaint also alleged that on or about the 26th of December, 1884, an account was stated between the plaintiffs and the defendant which was received and accepted by the latter without objection, and by which account the sum of §1,122.80 was shown to be due the former.
The defendant by his answer denied any knowledge or information as to the sum advanced or whether any statements were ever rendered showing an indebtedness on his *466 part, and also that an account was ever stated, and set forth an affirmative contract to the effect that the plaintiffs, by arrangement with him, were to buy stock upon a margin, carry it until the margin was exhausted ana then notify the defendant, in which case, if he did not elect to supply more margin, the stock should be sold. And further, that the plaintiffs failed to notify him and did not sell out the stock when the margin was exhausted.
The plaintiffs seem to have sustained all the allegations in the complaint having shown the purchase of stock and the transmission of the statements to which reference has already been made through the mail; and further, by Mr. Knickerbocker, one of the plaintiffs, that the defendant had never complained to him or found fault with the account, but on the contrary, had told him that he expected to be down to settle up the account, i. to go to New York either for that purpose or to call while there.
The defendant’s counsel upon the plaintiffs resting, moved for a non-suit upon the ground that the plaintiffs had failed to make out a cause of action. This motion was denied and the defendant excepted.
It is quite apparent from what has already been stated, although not wholly in detail, on the evidence given on behalf of the plaintiffs, that the motion could not with any propriety be entertained. The defendant doubtless predicated the motion on the assumption that the plaintiffs must recover in a secundum allegata and not having established an account stated the complaint being on an account stated, must fall. But there was some evidence independent of the account stated which was received without objection— indeed the complaint was broad enough to warrant its reception, and the testimony tending to establish an account stated was sufficient to call upon the defendant at least for a response, and which in the absence of any contradictory evidence, was quite sufficient to sustain the allegation in that respect made.
The defendant, when called, did not deny the receipt of any one of the statements, nor did he deny or repudiate any of the transactions as to which the statements were made or the conversatisn related by Mr. Knickerbocker. What he did say was, that he met Mr. .Knickerbocker at Saratoga, in July or August, 1884, and when asked by him, “What are you going todo about tiffs stock?” said: “I don’t consider myself responsible for it after the margin was used up;” to which Knickerbocker said: “You know that is not the way we treat our customers;” whereupon the defendant said: “I told him I didn’t consider myself responsible; that when I put up ten per cent margin, if I didn’t make up my mind that I wanted to continue, it *467 would be sold out.” And further that he was given to understand that his margin was absorbed when the conversation took place, asserting that he never asked Mr. Knickerbocker to renew anything.
It will have been observed that this is a mere assertion by the defendant of his legal liability, according to his own judgment. He does not state any facts of which that judgment might be predicated. He merely stated his opinion. He did not show by that method of expressing himself that he had made any agreement whereby he was to be relieved from all responsibility as set up in his answer, when the margin was exhausted, and that the plaintiffs must protect themselves by a sale of the stock when that event occurred. The consequence was that there was nothing really to go to the jury, and the learned justice “was justified, indeed, could not with propriety have done anything else, in directing a verdict for the plaintiffs.
The consideration of the various cases relating to the legal rules which govern actions updn an account stated, indulged in by the counsel for the defendant, and clearly and succinctly presented in an able brief on that subject, is really not necessary for the disposition of this case. The defendant put himself upon the broad ground that he was not responsible, and the case in that respect resembled Quincey v. White (63 N. Y., 370), in which the court of appeals, in discussing the effect of an account rendered to which no objection was made, said: “When, for some independent reason, a person disclaims all liability, he is not bound to examine the items, or be taken to have assented to them, if he does not object. In such a case he puts himself upon higher ground. He says in effect, I have nothing to do with this account, and I deny all liability for anything.
When he takes that ground, however, he must establish it, if the facts and circumstances shown on behalf of the plaintiffs warrant the conclusion and establish a liability, which was done in this case.
An examination of the record shows no reason why the judgment should be disturbed, and it must therefore be affirmed, with costs.
Daniels, J., concurs._