(9 Misc. Rep. 362.)

### NATIONAL BOARD OF MARINE UNDERWRITERS v. NATIONAL BANK OF THE REPUBLIC OF NEW YORK.

(Superior Court of New York City, General Term. July 2, 1894.)

BANKS AND BANKING—PAYMENT OF CHECKS—FORGED INDORSEMENTS.

In an action against a bank by a depositor to recover the amount of checks drawn by plaintiff, but alleged to have been paid by defendant on indorsements of the payees' names, forged by plaintiff's cashier, part of whose duty was to fill in the body of checks for plaintiff to sign, pay bills, and keep the accounts, it appeared that the money on the checks in

question had been obtained by plaintiff's cashier, but there was no evidence that any payees had been named in them, the canceled checks having been destroyed by the cashier.  *Held*, that plaintiff could not recover, as it would not be presumed that the cashier committed forgery in addition to the embezzlement, when he could have avoided forgery by making the checks payable to "cash" or "bearer," in which event defendant would not be liable.

Appeal from judgment on report of referee.

Action by the National Board of Marine Underwriters against the National Bank of the Republic of New York.  There was a judgment in favor of plaintiff, and both parties appeal; plaintiff, on the ground that the referee should have allowed $4,914.62, instead of $2,803.27, and defendant, on the ground that the amount allowed was excessive. Affirmed on plaintiff's appeal.  Reversed on defendant's appeal.

Argued before FREEDMAN, McADAM, and GILDERSLEEVE, JJ.

George A. Black, for plaintiff.
Hastings & Gleason, for defendant.

McADAM, J.  The plaintiff was a depositor in the defendant's bank, and sued to recover $4,914.62, as a balance of its deposits. The answer admits the deposits, and alleges (1) payment of all but $178.39, and (2) an account stated, by which the plaintiff is claimed to be concluded as to the balance due.  The difference between the respective balances of the plaintiff's deposit account with the defendant's bank, as figured by the two parties to the action, arose out of the payment by the defendant, between May 1, 1891, and March 31, 1892, over its counter, in money, of 32 checks drawn by the plaintiff, which were charged by it against the plaintiff.  The payment of these 32 checks was the subject of controversy in the action. The course of business pursued by the defendant with respect to the account of the plaintiff appears to have been as follows:  At the end of each month the account was balanced, and a statement of all deposits and withdrawals entering into the account during the month was rendered by the defendant to the plaintiff, the bank surrendering to the plaintiff, with such statements, the checks so paid, as vouchers for the several items representing withdrawals. Concurrently with the rendering of such statement in writing, the bank also furnished the plaintiff a printed form of receipt for the paid vouchers appearing in the account, upon which form was printed a request as follows:  "Please examine accompanying statement, sign, and return this receipt promptly.  E. H. Pullen, Vice President."  The 32 checks in question were distributed through a period of 11 months, between May 1, 1891, and April 1, 1892.  Upon the trial it was proved that statements in writing, covering the 11 months, were rendered to and received by the plaintiff month by month, and the plaintiff produced such statements upon the demand of the defendant, and the same were received in evidence.  No claim was asserted by the plaintiff against the bank until April 5, 1892.  In the meantime it had regularly received the several statements of account, and had retained them without any objection.

During the period named, plaintiff had in its employ as cashier one Thomas Vigus, to whom were intrusted the books of account of the plaintiff, and the duty of making out bills, conducting correspondence, filling in the body of checks, and paying bills. On April 4, 1892, the plaintiff received a letter from Vigus confessing that he was short in his cash account to the extent of about $3,500, and on the following day the plaintiff, for the first time, notified the bank of its alleged claim, which was that the names of the payees to the different checks had been forged, and that the plaintiff was in consequence not chargeable with their amounts. The referee held that the receipt by the plaintiff of the monthly statements of account rendered by the defendant, and the retention thereof, without objection, for a considerable period of time, must be held, under the decisions of our courts, to have the effect of such a stating of the accounts between the parties as to throw upon the plaintiff the burden of impeaching the account so rendered; and, upon this principle, decided that as to the accounts prior to February, 1892, the presumption was that they were correct; that the onus was therefore cast upon the plaintiff to prove fraud, mistake, or forgery; and that, as none of these elements was so proved by the plaintiff, it was concluded by said accounts. On this theory, the referee found judgment in favor of the plaintiff for $178.39, the admitted balance, and for $2,624.88, the amount of the checks paid in February and March, 1892, upon the ground that, as to these two months, sufficient time had not elapsed to give the accounts the force of accounts stated; that the onus of proving payment to the proper persons was on the defendant; and that the defendant had not sustained the burden of proof in that respect. Upon this view, the referee awarded the plaintiffs $2,803.27, which includes the admitted balance of $178.39, and eight checks drawn in February and March, 1892, embracing one drawn in favor of "Butler, Stillman," intended for Butler, Stillman & Hubbard, the indorsement upon which was forged. No express assent to the accounts rendered was proved, but the plaintiff's silence in reference thereto was claimed to imply assent. The plaintiff, in order to overcome and negative the presumption that any of the accounts became stated by reason of silence, proved that Vigus, its clerk, had possession of the accounts and checks returned by the bank, and withheld all information of the true condition of affairs from it, and that it had no knowledge whatever in reference thereto. Upon this evidence, the plaintiff claimed, and with reason, that it had destroyed whatever inference of acquiescence or consent might otherwise have arisen from the retention of the checks and accounts. Welsh v. Bank, 73 N. Y. 424; Shipman v. Bank, 126 N. Y. 320, 27 N. E. 371; Frank v. Bank, 84 N. Y. 213; Quincey v. White, 63 N. Y. 370.

We think that the matter of accounts stated had nothing to do with the legal questions upon which the determination of the case depended. The accounts furnished by the bank to the plaintiff contain merely the date and amount of the payment, respecting which there was really no dispute, for the defendant proved without contradiction that the various payments had been made on the days

stated in the accounts upon checks drawn by the plaintiff; so that, after all, the proposition involved is whether the payments had been made to persons authorized to receive them, and this depends upon whether the checks were payable to the order of particular individuals, and whether their indorsements thereon had been forged. The Butler, Stillman check was produced, and the bill it was intended to pay offered in evidence. This check was clearly intended to pay the claim owing to Butler, Stillman & Hubbard, and the check was intended for that firm. It was not a check drawn to the order of a fictitious person, because it represented real persons, although they were not properly named in it. The defendant was therefore clearly liable for $1,192.03, the amount of this check, and for $178.39, the balance of account, aggregating, without interest, $1,370.42; and for this amount the referee ought to have awarded the plaintiff judgment. Respecting the other 31 checks, these were not produced, having been destroyed by Vigus, and there was no evidence tending to show whether they were payable to particular persons or not. Vigus had defrauded the plaintiff by his dishonest conduct in withdrawing money from the bank on genuine checks, signed by the officers of the plaintiff, all of which were filled up by him, and, owing to the confidence which he enjoyed, were signed by such officers without critical examination or inspection. The only proof in the case tending to show that these checks were made payable to particular individuals was that the plaintiff owed certain individuals bills corresponding with the amounts of the checks, which bills the plaintiff intended to pay by these checks. But it will not do to infer that, because Vigus was dishonest and made away with his employer's money, he added to his misconduct the independent crime of forgery, or that he drew the checks in a form to make forgery necessary. Indeed, his purpose would have been facilitated by making the checks payable to "bearer," or to "cash" or "petty cash;" and the inference that he did so make them is partly borne out by the evidence. In the absence of proof that the checks were drawn in a form that required indorsement, there was nothing which called upon the defendant to prove that the checks were without indorsement, or, if indorsed, that the indorsements were genuine; for, if not payable to the order of a particular person, no indorsement was necessary. The adjudicated cases hold that, even if accounts had been rendered to the plaintiff, it was not bound to know that the indorsements upon checks returned therewith were genuine, but had the right to assume that the defendant had performed its duty by ascertaining, before making the payments, that they had been made to the proper persons. But, where the form of the checks as paid does not appear in evidence, it is more in accordance with legal presumptions to infer that the bank paid the checks to persons entitled to receive the money than that it paid on indorsements which were forged, and to persons unauthorized to receive payment. If the plaintiff's signature as drawer of the checks had been forged, other questions would have arisen; but that element does not require discussion, for it is not in the case, and, for the reasons stated, the defendant is liable only for the

$1,370.42 before referred to. To hold otherwise would be to infer that, because the indorsement on the Butler, Stillman check had been forged, the other 7 checks drawn during February and March had also forged indorsements thereon. We can indulge in no such presumption, and have no more right to assume that the indorsements on these 7 checks were forged than to assume that the indorsements on the whole 32 had been forged,—a conclusion which would necessitate a judgment in favor of the plaintiff for the whole amount claimed.

The cross appeals are therefore to be disposed of as follows: On the appeal taken by the plaintiff from the judgment as inadequate, there must be an affirmance, with costs; but, on the appeal taken by the defendant, the judgment must be reversed, and a new trial ordered, with costs to the defendant to abide the event, unless the plaintiff stipulates to reduce the recovery to $1,370.42, with interest thereon, in which case the judgment for that amount will be affirmed, but without costs on the defendant's appeal. All concur.