JAMES H. HOAG, Appellant, *v.* EDWARD WRIGHT and MONTROSE CHURCHILL, as Executors, etc., of HESTER HOAG, Deceased, Respondents.

*Evidence — when the admission of letters between the parties not relating to the subject of the action requires a new trial.*

In an action brought to recover on two promissory notes, given to a son by his mother, who had since died, to which the defense of want of consideration was interposed, a letter written by the son to the mother, and a reply by the latter, both written some two months after the date of the first note and some four years prior to the date of the second one, in which letters the writers criticised each other's conduct relating to the board and care of the mother by the son, but made no reference to the notes, are incompetent, and, being calculated to prejudice the jury, their admission in evidence over the objection of the son constitutes good ground for a new trial where a verdict is rendered against him.

APPEAL by the plaintiff, James H. Hoag, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 12th day of October, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of February, 1898, denying the plaintiff's motion for a new trial made upon the minutes.

*Isaac N. Mills*, for the appellant.

*James M. Hunt* [*George W. Elkins* with him on the brief], for the respondents.

Woodward, J.:

There is only one question necessary to be considered upon this appeal, and that is the admission of certain letters over the objection of the plaintiff. The plaintiff was a son and only heir of the late Hester Hoag, and the action was brought on two promissory notes made by the said Hester Hoag to the order of the plaintiff. One of these notes was dated at Yonkers on the 13th of November, 1894, payable on demand, for $4,000, and the other bore date of Amawalk, October 15, 1890, and was payable on demand, for the sum of $2,000. The defense denied on information and belief that the said Hester Hoag made the notes in question, or that she delivered them to the plaintiff, and alleged that if any such notes were made or delivered they were without consideration, null and void. Plaintiff introduced the notes in evidence and identified the two signatures as those of his mother, leaving the presumption of consideration and delivery where the law has placed it. (Laws of 1897, chap. 612, §§ 35, 50.)

The defendants did not undertake to produce direct evidence of a want of consideration for the notes, but they did put witnesses on the stand who swore, as experts, that the signatures to these two notes were forgeries. All of the evidence as to the want of considertion for the notes was of a circumstantial nature, based upon the transactions of a financial character between the mother and son, with some testimony as to the plaintiff's conduct towards his mother, including the letter, the introduction of which appears to be fatal error. The letter of the plaintiff to his mother, with an unsigned answer on the back of it, was first introduced merely for the purpose of showing handwriting, but was afterward introduced and read in evidence, to which the plaintiff's counsel duly objected, upon the grounds that it was irrelevant and immaterial. This objection seems well taken. Neither the letter of the plaintiff nor the reply has any relation to the questions at issue, and we are unable to find any authorities, either among those cited or anywhere in the books, which justify the admission of this kind of evidence. The letter of the plaintiff addressed " Mother," recites that " I have learned through Mrs. Williams that you and Aunt Mary contemplate coming here to live in one room as it were. I cannot consent for you to do that, for it will not be any credit to you or me socially or in a business sense to

have you live in that way, and it is not in our agreement, but if you
and Aunt Mary are a mind to come and occupy your room and live
with us, and pay a reasonable board, I will endeavor to make you as
comfortable and as happy as I can.   You can either come to your
meals at the table or I will send them up to your room, but I cannot
think of permitting you to sleep and cook in the same room.  Your
room will be taken care of and everything done that is needful.
Your talk and actions in doing as you have has injured me very
much in the past in many ways, and no one can blame me for want-
ing things differently.   When you were sick I did all I could, and
if you come and board with me, as I have said above, my home is
open to you and Aunt Mary, as it has always been.   I will try to
make it pleasant and agreeable."   Clearly there is nothing in this
letter in relation to the notes; nothing in it material to the question
of consideration for the notes in suit, or in reference to the question
of the making of such notes.

"It is often permissible," say the court, in the case of *Quincey*
v. *White* (63 N. Y. 370, 380), " to prove facts and circumstances as
a part of the history of the case, and to show the relation of the
parties to the principal transaction;" but it has never been held, so
far as we have been able to discover, that an abstract letter, in
no wise connected with the principal transaction, was admissible.
"It is hardly necessary to inquire," say the court in the case
of *Farmers & Manufacturers' Bank* v. *Whinfield* (24 Wend.
419, 426), "whether, supposing it to have been admissible, such
a course was correct; for we think it impossible to uphold a
verdict which may have resulted from allowing the jury to take with
them as evidence a paper confessedly foreign to any of the matters
in issue."   This was a case in which, in the course of a transaction
resulting in a bond and mortgage, one Thomas Williams had, at the
request of one Vassar, made a statement of his affairs.  On the
cross-examination of Williams it was sought to impeach the fairness
of this statement, and the court say: "Whether successfully or not,
was, I think, entirely immaterial, for I have been unable to see that
it had the remotest relevancy to the matter in hand."   The trial
court interrupted the examination, but permitted the case to go to
the jury with the statement of Williams before them.   "The sub-
mission of the paper in that way to the jury," say the court, "was,

we think, equivalent to its admission as evidence in the cause. What use the jury may have made of it we cannot say. It had been examined to* by the plaintiff's counsel, with what effect in the mind the jury it is also impossible to determine. Perhaps they thought it impeached. Its relevancy was not pointed out at the bar, and we have not been able to discover that it had any bearing whatever." Again, the court say in the same case: "It was surmised on the argument that, the paper being immaterial, we must presume that the jury allowed no weight to it. * * * If they see that it must necessarily have tended in his favor; if it made for him in its own nature, or could not possibly prejudice his case, that might be an answer; but so long as the chance is equal that it may have had some effect one way or the other, the party is entitled to the benefit of the principle that irrelevant testimony should be shut out from the jury."

"All evidence," say the court, in the case of *Thompson* v. *Bowie* (4 Wall. 463, 471), "must have relevancy to the question in issue, and tend to prove it. If not a link in the chain of proof, it is not properly receivable. . * * * The general character and habits of Bowie were not fit subjects of inquiry in this suit for any purpose. The rules of law do not require the plaintiff to be prepared with proofs to meet such evidence. That Bowie gambled at other times, when in liquor, was surely no legal proof that because he was in liquor on the 1st day of January, 1857, he gambled with Steer. It is very rare that in civil suits the character of the party is admissible in evidence, and it is never permitted unless the nature of the action involves or directly affects the general character of the party." In this case Bowie sought to avoid payment of certain promissory notes on the statutory grounds that they were given for gambling debts; and it was sought to prove that when in liquor Bowie was given to gambling, and that he was drunk at the time these notes were given.

It is not contended in the case at bar that the introduction of the plaintiff's letter to his mother was specially harmful, but that it was irrelevant and immaterial, and that it was introduced for the purpose of getting before the jury the unsigned reply of the mother, equally

---

* *Sic.*

irrelevant and immaterial, but which could not fail to prejudice the jury against the plaintiff. Without attempting to follow the orthography of this letter, it says : " My dear Child, you say your home has been open to me and Aunt Mary. Neither of us has been beholden to you at all. We have both been servants to you ; servants generally have their board and pay for their labor, which you never laid out one penny for me, and, besides, I have taken charge of all your comings and goings and of your patients, waiting on them and working, as you can get no servants to or wife to. What has your wife done to help you but to try to turn your mother out of her home and strip her of every mouthful of victuals, and she had to go to the neighbors for food to eat until she could get things in, and you stood by and seen your woman ' stup ' your mother that had been a slave for you, which is no credit to you, much more to allow your woman, that had nothing but an old bedroom set and very little to cover her bed, and very few clothes to her back, only what you got her before she got in here." The letter continues at considerable length in this same strain, but at no point does it make any mention of the notes in issue, or mention any fact which would have the remotest bearing upon the question of their genuineness or of the consideration for such notes ; and it is obvious that the only purpose which these two letters were calculated to serve was to prejudice the jury against the plaintiff. Of what possible consequence could it be, in reference to the note made in 1894, that the mother of the plaintiff, sometime subsequent to December 23, 1890, wrote him a letter in which she scolded him for some real or fancied grievance ? The first note was dated October 15, 1890, more than two months before either of the letters was written ; perhaps, before the grievance complained of, and with absolutely nothing to connect these letters with the transaction resulting in the issuing of these notes. It was clearly error to permit them to go before the jury. The effort of a jury to arrive at the merits of a question involving the validity of two promissory notes upon evidence that the plaintiff and his mother had at one time exchanged letters mutually criticising each other in reference to a home for the mother and aunt might be imagined ; it could not be described. There is nothing in the evidence to show that these letters were written with these notes in view. One of the notes, if it

was a valid note, had then been in existence more than two months. Clearly no inference as to the question of a consideration or of the validity of the notes could be drawn from letters written long subsequently and which did not pretend to deal with the question at issue. The other note was made nearly four years afterward, if made at all as a valid note, and it would be absurd to contend that there was anything in this garrulous letter from the mother to indicate either that the note was forged or that it was given without consideration. The verdict of a jury, considering such evidence, must be presumed to have been prejudiced against the plaintiff.

In the case of *United States* v. *Ross* (92 U. S. 281) the court say: "Because somebody's cotton (how much or how little is not shown) arrived at Kingston from Rome at some time not known and was forwarded to Chattanooga before the 19th of August, 1864, it is inferred that the claimant's thirty-one bales, presumed to have reached Chattanooga, thus arrived and were forwarded; and, because forty-two bales were received at Chattanooga on that day from the quartermaster at Kingston, it is inferred that the claimant's bales were among them. These seem to us to be nothing more than conjectures. They are not legitimate inferences, even to establish a fact; much less are they presumptions of law. They are inferences from inferences; presumptions resting on the basis of another presumption. Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or of law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed. Starkie on Evid., p. 80, lays down the rule thus: ' In the first place, as the very foundation of indirect evidence is the establishment of one or more facts from which the inference is sought to be made, the law requires that the latter should be established by *direct* evidence, as if they were the very facts in issue.' It is upon this principle that courts are daily called upon to exclude evidence as too remote for the consideration of the jury. The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences." Chamberlayne's Best on Evidence (Am. Notes,

p. 258); after quoting Mr. Justice STEPHEN's definition of relevancy, lays down the rule that "legal relevancy, which is essential to admissible evidence, requires a higher standard of evidentiary force. It includes logical relevancy, and, for reasons of practical convenience, demands a close connection between the fact to be proved and the fact offered to prove it. All evidence must be logically relevant, that is, absolutely essential. The fact, however, that it is logically relevant does not insure admissibility; it must also be legally relevant. A fact which, 'in connection with other facts, renders probable the existence' of a fact in issue, may still be rejected if, in the opinion of the judge and under the circumstances of the case, it be considered essentially misleading or too remote."

It is clear, then, that under the rules laid down by text writers, and sanctioned by the courts, the admission of these letters was error; they did not relate, even remotely, to the issues involved in the action. The fact that the mother and the plaintiff quarreled in 1890, two months after the date of the first note and four years prior to the date of the second, could give the jury no possible light upon the question of whether these notes were given for a valid consideration, or whether they were forgeries; and these were the issues involved. "It is a well-established principle," say the court in the case of *People* v. *Corey* (148 N. Y. 476, 489), "that illegal evidence which has a tendency to excite the passions, arouse the prejudices, awaken the sympathies, or warp or influence the judgment of jurors in any degree, cannot be considered as harmless;" and that rule is especially applicable to this case, where the evidence could have no other possible effect. The question of a gift was not involved. The plaintiff stood upon the legal presumption that the notes were given for a valuable consideration, and evidence that the mother was not likely to give the plaintiff the notes was clearly irrelevant, because that question was not in issue.

"It is well settled in this State," say the court in the case of *People* v. *Strait* (154 N. Y. 165, 171), "that a party is entitled to the benefit of any competent evidence he may offer which bears upon a controverted question of fact embraced in the issue;" but we have found no instance in which it has been held that the court was warranted in receiving incompetent evidence of a question of fact not in issue. Without expressing any opinion as to the merits

of the case, we are forced to conclude that the judgment and order appealed from should be reversed, and that a new trial should be granted, costs to abide the event.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.