NEW YORK COUNTY.—HON. RASTUS S. RANSOM,
SURROGATE.—May, 1889.

MATTER OF MONROE.

*In the matter of the application for the probate of the
will of* THOMAS J. MONROE, *deceased.*

The court may grant leave to a contestant of a will the genuineness of
which is disputed, to photograph the same.
And where such will is executed in triplicate an order may be made com-
pelling the filing of two parts thereof.
Where the genuineness of the will is disputed the court may grant leave to
a contestant to subject the will to chemical tests for the purpose of
disclosing the nature and composition of the ink, and the process or
processes to which it has been subjected.

APPLICATION for the probate of a will.

ERASTUS F. BROWN, *for proponent.*

BOORAEM, HAMILTON & BECKETT, *for* CHARLES H. BECKETT, *special
guardian.*

THE SURROGATE.—This is an application by the
special guardian and contestant in this proceeding,
which is now pending before the assistant, for leave
to photograph the various papers which have been ·
filed as the will of deceased, and to compel the filing
of two parts of one of said wills, which was executed
in triplicate ; likewise, that the last paper be subjected
to chemical tests for the purpose of disclosing the
nature of the composition of the ink and the process
or processes to which it has been subjected.

Upon the oral argument the Surrogate decided the

application first stated in favor of the petitioner, reserving only the question of his power to direct or permit the chemical tests. The special guardian on the oral argument stated that he was unable to find any authority for the application.

Consultation of the various sources of authority upon the subject of expert testimony and the various tests for the purpose of establishing or disproving handwriting has not resulted in the discovery of any authority for granting the application. It is apparent, however, from some of the cases that such an examination must have been permitted; for instance, in Fulton v. Hood, 34 *Penn. St.* 365, expert testimony was received in corroboration of positive evidence to prove that the whole of an instrument was written by the same hand, with the same ink, and at the same time. It is inconceivable how testimony of any value could be given as to the character of ink with which an instrument was written unless it had been subjected to a chemical test. The writer of a very valuable article in the eighteenth volume of the American Law Register, page 281 (R. U. Piper, an eminent expert of Chicago, Ill.), in commenting upon the rule as stated in the case of Fulton v. Hood, *supra*, very properly says: " Microscopical and chemical tests may be competent to settle the question, but these should not be received as evidence, I think, unless the expert is able to show to the court and the jury the actual results of .his examination, and also to explain his methods, so that they can be fully understood."

The writer of this article is also authority for the statement that in the French courts every manipula-

tion or experiment necessary to elucidate the truth in the case, even to the destruction of the document in question, is allowed, the court as a matter of precaution, being first furnished with a certified copy of the same.

The most obvious argument to be urged against allowing a chemical test to be made on a will, and one that was suggested by the court on the argument of this motion, is that, inasmuch as the paper may be the subject of future controversy in this or some other tribunal, future litigants should not be prejudiced by any alteration or manipulation of the instrument. I do not think, however, that this objection is sound. Take an extreme case, of permitting a sufficient amount of the ink (which the affidavit of the expert shows to be but infinitesimal) for the purpose of chemical examination; the form of the letter would remain upon the paper; if not, the form and appearance of the entire signature might, as a preliminary precaution, be preserved by photography. The portion of the signature remaining would afford ample material for future experiments in any subsequent proceedings wherein it might be deemed advisable to take that course.

Because the subject matter of the controversy may be litigated hereafter, should not deprive parties in this proceeding of any rights which they would otherwise have. They certainly are entitled to all rights in this proceeding that the parties to any future proceedings would have. Besides, all the parties whose presence would be necessary to an adjudication in, for example, an ejectment proceeding, are (or their pri-

vies are) parties here.   It certainly cannot be that the
law, seeking the truth, will not avail itself of this sci-
entific method of ascertaining the genuineness of the
instrument because of some problematical effect upon
the rights or opportunities of parties to future litiga-
tions respecting the same instrument.   The possibil-
ities of litigation over a will are almost infinite, and if
such a rule should obtain, this important channel of
investigation would be closed.   Suppose the same ob-
jection were raised to the first action of ejectment
which might be brought, it might then with the same
force be urged that parties to some future ejectment
suit would be prejudiced by a chemical test of the ink
used in the will; and so on ad *infinitum*.

By not availing itself of this method of ascertaining
the truth as to the character of the ink, the court de-
prives itself of a species of evidence which amounts
to practical demonstration.

I can see no reason why the application should not
be granted :  " The administration of justice profits by
the progress of science and its history shows it to have
been almost the earliest in antagonism to popular de-
lusion and superstition.   The revelations of the mi-
croscope are constantly resorted to in protection of
individual and public interests. : . . .   If they are
relied upon as agencies for accurate mathematical
results in mensuration and astronomy, there is no rea-
son why they should be deemed unreliable in matters
of evidence.   Wherever what they disclose can aid or
elucidate the just determination of legal controversies
there can be no well founded objection to resorting
to them."   Frank  v.  Chemical  National  Bank, 37

*Super. Ct.* 34 : affirmed in the Court of Appeals, 84 *N. Y.* 209.