POLLARD *v.* WELLFORD.*

(*Jackson.*    May  19,  1897.)

1. BANKS AND BANKING.  *Bank's liability for paying forged check.*

Doctrine reaffirmed that a bank must, at its peril, pay a check to the actual payee or upon his genuine indorsement; and, if it fail to do so from mistaking the identity of the payee, or by paying upon a forged indorsement, it is responsible for the loss.  (*Post, p. 116.*)

2. SAME.  *Bank's liability for paying forged check not excused by depositor's negligence.*

Failure of a depositor in a bank to examine the checks of such bank when returned to him, the indorsements on which were forged, on none of which neither the bank nor the depositor had suffered any loss, will not prevent a recovery from the bank of an amount subsequently paid out by the bank on checks, the indorsements on which were forged in a similar manner.  (*Post, pp. 116–118.*)

Case cited and approved: 73 N. Y., 424.

3. CHANCERY PLEADING AND PRACTICE.  *Cross bill not maintainable to bring in a new party.*

A bank sued by a depositor for a balance it had paid out on checks, the indorsement on which was forged, cannot set up by way of cross bill that such checks were paid by it through the clearing house to another bank specified, which is not a party to the action, and that the latter bank is liable to it, as the issue raised thereby has no material connection with any litigation between the original parties.  (*Post, pp. 118–120.*)

4. SAME.  *Cross bill bringing in new party maintainable, when.*

But, under the practice in this State, a cross bill bringing in a new party whose presence is essential to the giving of full

---

* As to the duty of a depositor in respect of forged checks charged to him by a bank, the authorities are collected in a note to *First National Bank of Birmingham* v. *Allen* (Ala.), 27 L. R. A., 426.—REPORTER.

15 P—8c

relief and ending the controversy, will be maintained. (*Post,* pp. *119, 120.*)

Cases cited and approved: Hildebrand *v.* Beasley, 7 Heis., 121; Hall *v.* Fowlkes, 9 Heis., 754; Odam v. Owens, 2 Bax., 446.

5. APPEAL. *Questions not reviewable upon.*

A bank sued by a depositor for a balance paid out by it on checks with forged indorsements, cannot, upon its sole appeal, complain of the action of the Court below in releasing the purported indorser jointly sued, where it filed no cross bill against him in the Court below, and did not seek by its pleadings any relief against him. (*Post, pp. 120, 121.*)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. STERLING PIERSON, Ch.

SMITH & TREZEVANT for Pollard.

CARROLL, CHALMERS & McKELLAR for Wellford.

McALISTER, J. Complainant, Pollard, filed his bill in the Chancery Court of Shelby County against the defendants for the collection of three notes, each for the sum of $800. These notes were executed by A. K. Ward and J. L. Wellford, payable to the order of S. C. Toof, and were indorsed by Toof. The first note was dated September 23, 1895, the second September 30, 1895, and the third October 3, 1895, each payable thirty days after date.

Complainant, believing these notes to be genuine, and to represent a real business transaction, purchased them at a discount from A. K. Ward. In payment of the first note complainant, on September 23, 1895, gave Ward his check on the Union & Planters' Bank, wherein Pollard was a depositor, for $790, payable to the order of S. C. Toof, the payee and indorser of the note. On September 30, 1895, complainant, Pollard, purchased the second note from Ward, similarly indorsed, and gave him a check for $790, on the same bank. On October 3, 1895, complainant purchased the third note, and gave Ward a similar check in payment on said bank. The three checks were presented to the bank and were paid. Toof's name was apparently indorsed thereon, with Ward's name also indorsed under it. The payments were all made to Ward. Complainant, Pollard, in the meantime, deposited the three notes so purchased by him in the Union and Planters' Bank for collection. As the said notes severally matured they were presented to the makers for payment; and payment refused. Thereupon, they were protested for nonpayment, and notice given to Toof, the apparent indorser. It then became known that Wellford's signature as one of the apparent makers of the note, and Toof's signature as indorser, as well as Toof's indorsement, had all been forged by Ward.

It further appears that on October 15, 1895, Ward fled to Honduras, and three days thereafter

Pollard's account was balanced by the bank, and these three checks were returned to him canceled and paid. Pollard thereafter, on the twenty-first of October, demanded payment of the bank of the balance of his account, including these three checks, which amounted to $2,370. Payment was refused by the bank, and thereupon, on the ninth of November, 1895, this bill was filed against Wellford as maker, and Toof as indorser, of the notes, and against the Union & Planters' Bank, to recover $2,370, the amount paid by the bank on the checks with Toof's forged indorsement. Wellford and Toof pleaded *non est factum* to their signatures on the notes. The Union & Planters' Bank filed an answer in which it denied all liability on account of the payment of said checks. The Chancellor, on final hearing, sustained the plea of *non est factum* and dismissed the bill so far as any relief was prayed against Wellford and Toof. A decree, however, was pronounced against the bank for the amount of the three checks improperly paid. The bank alone appealed. The law is well settled in this State that a check drawn in favor of particular payee or order is payable only to the actual payee or upon his genuine indorsement, and if the bank mistake the identity of the payee, or pay upon a forged indorsement, it is not a payment in pursuance of its authority, and it will be responsible.

The proof in this case is clear that the indorsement of S. C. Toof upon the check was a forgery,

and counsel for the bank do not gainsay its liability if there is nothing else in the way. Their insistence, however, is, that complainant, Pollard, is not entitled to a decree against the bank, because his own negligence was the proximate cause of the loss to the bank. The negligence of Pollard is alleged to consist in the following facts: That complainant's transactions with Ward covered a period of about a year and a half; that during this period he had turned over to Ward, from time to time, thirty-five checks, all payable to the order of S. C. Toof; that thirty-two of these checks had been paid on indorsements exactly similar to the indorsements on the checks in suit, and all of which complainant alleges were forgeries; that during this time his account had been balanced three times, but Mr. Pollard testifies that notwithstanding his account had been rendered him by the bank, he never examined it until after this litigation arose. He further testifies that he knew Mr. Toof's signature, and that the signatures on all the checks were forgeries, except possibly two of them. The argument is, that complainant, Pollard, knew Mr. Toof's signature, and if he had examined the thirty-two checks when they were returned to him with his stated account, he would have discovered the forgeries that were being committed, and would have saved the bank the loss of the present checks. It is therefore insisted that, under circumstances like these, the failure of Pollard to examine the statements of his accounts and the canceled checks

attached thereto, was such negligence as will defeat a recovery.

We think this position untenable. There had been no loss to Pollard or to the bank on account of the thirty-two checks, and hence there was no cause to challenge an inspection of Toof's indorsement of these checks. We cannot see that any duty is imposed by law upon a depositor to examine his canceled checks when returned, with a view to detect forgeries in the indorsements. As stated by the New York Court of Appeals, in *Welsh* v. *German American Bank*, 73 N. Y., 424, "A depositor has a right to assume that the bank, before paying his checks, will ascertain the genuineness of the indorsement."

The next assignment of error is, that the Court erred in striking the cross-bill of the Union & Planters' Bank against the Continental National Bank from the files upon the motion of complainant. The cross bill was brief, and is as follows:

"Complaining, showeth your orator, the Union & Planters' Bank, that two of the checks mentioned and described in the bill of complainant, copies of which are filed therefor, and marked Exhibits "D" and "E," respectively, were paid by it through the clearing house to the Continental National Bank, and indorsed by the aforesaid bank. That, on a claim being made to it that the signatures thereon were forged, it notified the Continental National Bank of such claim, being advised that if it was liable to the said drawer,

the complainant herein, the Continental National Bank, was liable to it.

"Wherefore, in consideration of the premises, it prays that copy and subpœna do issue to the Continental National Bank on this cross bill, that it may be made a defendant hereto, to the end that the controversy set forth in the pleadings may be fully and finally settled in this suit, and if, on final hearing of this cause, it shall be adjudged liable to pay to the complainant herein the amount of the aforesaid checks, copies of which are marked Exhibits "D" and "E" to the bill of complaint herein; that it have a decree over against the Continental National Bank, and such other and further relief as may appear suitable and proper in the premises.

"UNION & PLANTERS' BANK,
"By S. P. READ, *Cashier.*

"I am security for costs.          S. P. READ."

The Chancellor being of opinion that said Continental National Bank, not being a party to the original cause, and not being connected with any litigation between the parties to this cause, ordered this cross bill to be stricken from the files. In this we think there was no error.

We do not sustain the action of the Chancellor upon the ground that a new party may not be brought into a lawsuit by cross bill. The cross bill in this case was formal, and not a mere answer filed as a cross bill under the statute. We approve the

rule laid down by Judge McFarland in *Hilderbrand*
v. *Beasley*, 7 Heis., 121. Said that eminent Judge:
"The elementary authorities hold that a cross bill
must be confined to matters growing out of the orig-
inal bill, and, according to some authorities, new
parties cannot be introduced into a case · by cross
bill. See 2 Dan. Ch. Prac., citing 17 How., 145.
But, under our practice, we should not be inclined
to carry the doctrine so far. . . . It is the
policy of the law to prevent a multiplicity of suits,
and, upon the facts stated in the cross bill, the re-
lief to which the complainant may be entitled herein
could not be fully given without making Fort a
party." See, also, Gibson's Suits in Chancery, Sec.
662. It is true that in an answer filed as a cross
bill, under the statute, new parties cannot be brought
before the Court. 9 Heis., 754; 3 Tenn. Ch., 356;
2 Bax., 446.

In this case, however, we find that the question
sought to be made by the Union & Planters' Bank
had no material connection with any litigation be-
tween the parties to this cause, and the action of
the Chancellor was correct.

The next assignment of error is, that the Court
erred in finding there was no proof to overcome
the plea of *non est factum* filed to the three notes
by Wellford and Toof, and in dismissing the bill as to
them. It will be observed that the Union & Planters'
Bank, by this assignment of error, is seeking to re-

Pollard *v.* Wellford.

verse the action of the Chancellor in releasing Toof and Wellford on their plea of *non est factum.*

Complainant did not appeal from the action of the Chancellor in releasing Toof and Wellford. The Union & Planters' Bank appealed from the decree pronounced against it. We think the only question before the Court is in respect of the liability of the bank to complainant, Pollard. The bank filed no cross bill against Toof in the Court below, and sought by its pleadings no relief against him, and is in no condition to undertake now to review or reverse the action of the Chancellor releasing Toof.

The result is, the decree of the Chancellor is in all respects affirmed. The costs of this Court will be paid by the bank, and the costs below will be paid as decreed by the Chancellor.