HENRY WELSH, Respondent, v. THE GERMAN AMERICAN BANK, Appellant.

The drawer of a check, made payable to the order of the payee, is not bound by a payment thereof by the bank, upon a forged indorsement of the name of the payee; it is bound before payment to ascertain the genuineness of the indorsement.

A depositor owes no duty to a bank requiring him to examine his pass-book or returned checks, with a view to the detection of forgeries in the indorsements; he has a right to assume that the bank before paying his checks will ascertain the genuineness of the indorsements.

The rule that notice to an agent is notice to his principal is only applicable to cases where the agent is acting in the course of his employment.

An account stated may be impeached by evidence of fraud or mistake.

Plaintiff, a commission merchant doing an extensive business, upon presentation to him by his book-keeper, who had charge of his produce and bank books, of fictitious accounts of sales of the property of a customer, signed checks for the amounts, payable to the order of the customer, which were delivered to the book-keeper, who forged the indorsement of the customer and put the checks in circulation; they were paid by the bank, charged in plaintiff's pass-book and returned with the other vouchers to the book-keeper upon balancing the account, which was done monthly. Plaintiff did not discover the fraud or the forgeries until some months thereafter, and immediately upon making the discovery notified the bank. In an action to recover the balance of plaintiff's deposit, *held,* that the fact that plaintiff was deceived into giving the checks by his book-keeper did not make him responsible for the subsequent fraud upon the bank, as his acts did not in a legal sense contribute thereto; that plaintiff was not precluded from disputing the right of defendant to charge the checks to his account, because of the entry thereof in the pass-books, their return with the vouchers, and retention without objection; and that a verdict for plaintiff was properly directed.

(Argued April 9, 1878; decided April 23, 1878.)

· APPEAL from judgment of the General Term· of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported· below, 10 J. & S., 462.)

This action was brought to recover a balance alleged to be due plaintiff upon his deposit account with defendant.

The facts appear sufficiently in the opinion.

*D. M. Porter*, for appellant. There was an account stated between the parties, and this precluded a recovery. (*Bullock v. Boyd*, 2 Edw. Ch., 292; *Weiser* v. *Denison*, 6 Seld., 75; Story's Eq. Jur., 526; *Hutchinson* v. *Market Bk.*, 48 Barb., 321; *McDougal* v. *Cooper*, 31 N. Y., 198; *Lockwood* v. *Thorne*, 1 Kern., 170; *Avery* v. *Leach*, 9 Hun, 106; 1 Greenl. Ev., §§ 212, 291, 292; *Manhattan Co.* v. *Lydig*, 4 J. R., 377.) The payment of the checks by defendant was the same as if they had been payable to a fictitious payee. (*Coggill* v. *Am. Ex. Bk.*, 1 Coms., 113.) Plaintiff's negligence in signing the checks and his long delay in questioning the transaction prevented a recovery. (*Allen* v. *Coit*, 6 Hill, 318; *Aldarson* v. *Clay*, 1 Stark., 403; 48 Barb., 322, 323; *Johnson* v. *First Nat. Bk.*, 6 Hun, 124; *Redlich* v. *Doll*, 54 N. Y., 234, 239; *Goucester Bk.* v. *Salem Bk.*, 17 Mass., 42.) Plaintiff's acts amount to a ratification of the acts of his bookkeeper. (Story on Ag., §§ 234–260; *Lawrence* v. *Taylor*, 5 Hill, 114; *Ward* v. *Evans*, 2 Salk., 442; 2 Raym., 928; *Williams* v. *Mitchell*, 17 Mass., 98.) Defendant in paying the checks was guilty of no negligence. (*Justh* v. *Nat. Bk. of Comm.*, 56 N. Y., 480, 485; *Cont'l Nat. Bk.* v. *Nat. Bk. of Comm.*, 50 id., 575, 576.) Witness was bound to know what appeared on his books. (*Allen* v. *Coit*, 6 Hill, 318; *Aldarson* v. *Clay*, 1 Starkey, 403.) Defendant was legally concluded only as to the signature of plaintiff. (*Coggill* v. *Am. Ex. Bk.*, 1 Coms., 113; *Nat. Bk. of Comrce.* v. *Nat. Mech. Bkg. Assr.*, 55 N. Y., 211.)

*Samuel Hand*, for respondent. Defendant was bound to ascertain the genuineness of the payee's indorsements before paying the checks. (*Morgan* v. *Bk. of State of N. Y.*, 11 N. Y., 404; *Graves* v. *Am. Ex. Bk.*, 17 id., 205; *Johnson* v. *Bk. of Hoboken*, 6 Hun, 124; affirmed by Ct. of Apps.) There was no negligence of plaintiff to excuse defendant in paying the checks upon the forged indorsements. (*Palm* v. *Watt*, 7 Hun, 357; *Leavitt* v. *Stanton*, H. & D. Supp., 413; *White* v. *Bank*, 64 N. Y., 316, 322.) In making an

unauthorized disposition of the checks, the book-keeper was a wrong-doer and did not represent the plaintiff. (*Weisser* v. *Dennison,* 10 N. Y., 18; *Palm* v. *Watt,* 7 Hun, 357.) This was not a case of a fictitious payee. (*Am. Ex. Bk.* v. *City Bk.,* 5 N. Y. L. Obs., 18.)

ANDREWS, J. It is conceded that the balance of $3,164.11 is due to the plaintiff, unless the twelve checks drawn by him to the order of W. N. Johnson, at intervals between April 27, 1872, and March 28, 1874, are legally chargeable to the plaintiff's account.

The checks were received by the bank through the clearing-house, and when presented to and paid by the defendant they purported to be indorsed by the payee, but the indorsements were forgeries. The bank, before paying the checks, was bound to ascertain the genuineness of the payee's indorse-ment. The only authority conferred by the plaintiff upon the bank was to pay the checks upon the order of Johnson, and payment upon the forged indorsements did not bind the plaintiff. (*Morgan* v. *Bank of the State of New York,* 11 N. Y., 404; *Graves* v. *Am. Exchange Bank,* 17 id., 205.)

It is claimed that the plaintiff is precluded from disputing the right of the bank to charge the checks against his account for the reason that he was debited in his pass-book with the checks, and that the checks with other vouchers were returned to him by the bank upon the monthly writing up of the account, and were retained without objection. There is no claim that the plaintiff had any knowledge of the forgeries until August, 1874, and the evidence is uncontradicted that upon discovering the fact he immediately notified the bank. The circumstances in respect to the drawing of the checks, and the dealings of the plaintiff with the bank, may be briefly stated. The plaintiff during the time covered by the checks was a commission merchant, dealing in country produce, in the city of New York, his transactions amounting each year to several million dollars, and his books contained several thousand different accounts. Among other accounts he had

a commission account with W. S. Johnson of Jefferson county, who during the years 1872, 1873 and 1874, consigned butter to him for sale. Johnson sometimes drew upon the plaintiff against the account, and sometimes payments were made to him by the plaintiff's checks, and he was sometimes permitted to draw in advance of sales. During the period mentioned, one Swindels was the plaintiff's principal book-keeper, and had charge of the produce and bank-books of the plaintiff, and was in the habit from time to time of bringing to the plaintiff statements of sales for different customers with checks of corresponding amounts, and the plaintiff would examine them and if he found the checks and accounts to correspond, sign the checks and hand them to Swindels to be forwarded to the payees. The checks in question were procured by Swindels from the plaintiff, by fraudulently presenting to him fictitious accounts of sales of Johnson's property, together with checks filled up for corresponding amounts, and the plaintiff after examining them signed the checks and handed them to Swindels, to send to Johnson. The books showed no corresponding accounts in favor of Johnson and the checks were not debited to him. Swindles forged the indorsement of Johnson and put the checks in circulation. The pass-book of the plaintiff with the defendant was written up and balanced monthly, and returned with the vouchers. They were not returned to the plaintiff personally. Swindels had the charge of them. It was his duty to examine the bank account, and the plaintiff made no special examination of the account during the period covered by the checks. Swindels, made monthly trial balances of the books and presented them to the plaintiff. The plaintiff had no suspicion of the unfaithfulness of Swindels before the discovery of the fraud in respect to these checks in the summer of 1874.

The court directed a verdict for the plaintiff for the balance claimed. The defendant asked to go to the jury upon the question of the plaintiff's negligence, and also upon the question — whether there was an account stated binding upon the plaintiff, which request was refused. We think the verdict was prop-

erly directed upon the authority of *Weisser* v. *Denison, Prest, etc.* (10 N. Y., 68.) That was an action to recover an alleged balance of account arising from deposits made by the plaintiff's intestate in the defendant's bank, and the bank sought to charge the account with a large number of checks which purported to have been drawn by the plaintiff's intestate upon the bank. The checks had been forged by the confidential clerk of the depositor, and the forgeries extended through a period of about six months. During this time the bank-book of the intestate had been written up several times, and the amount of the forged checks debited thereon and the book and the vouchers returned by the bank, the clerk transacting the business with the bank, and receiving on each occasion, except one, the book and the canceled vouchers. It was not claimed that the plaintiff's intestate after he had knowledge of the forgery did any act making the check his own, but it was claimed, as in this case, that the account between the bank and the depositor became a stated account by the entries in the bank-book and striking a balance, and the return of the book with the vouchers ; and also that the depositor by neglecting to examine the checks and the bank account, on the return of the bank-book, adopted the checks as his own. The court while admitting that the account became, by the omission of the depositor to examine the bank-book and vouchers, an account stated, held that it might be impeached by evidence of fraud or mistake, and that this defense was defeated by proof of the forgery. JOHNSON, J. said : " But a stated account is liable to be opened by evidence of fraud or of mistake ; and when the payments represented by the checks in question were sworn by Weisser's representatives not to have been made by him or by his order or authority, the proof of payment afforded by the stated account was overthrown, and Weisser's right to the money remained unaffected." In respect to the question of negligence it was held that a depositor owes no duty to a bank which requires him to examine his pass-book or vouchers with a view to a detection

of forgeries of his name.   Upon this point JOHNSON, J., says :
"Whatever loss the bank has sustained, it has suffered from
its own negligence or want of skill in a matter in which, in
the first instance, it and it only was bound to exercise care
and diligence.   To this loss no act of Weisser has contributed.
He was guilty of no bad faith.   He has violated no duty
which he owed to the bank, and is in no way responsible.
He had a right to assume that the bank had discharged its
own duty to itself and was not bound to conceive it possible
that the bank had charged him with money which had not
been paid upon his order.   He was under no contract to
examine with diligence his returned checks and bank-book."
The suggestion that the knowledge of the fraudulent agent
was the knowledge of the bank was rejected, ALLEN, J., say-
ing : " The principle that notice to an agent is notice to the
principal is quite familiar, but is only applicable to cases
where the agent is acting in the course of his employment."

The case now before us is, we think, controlled by the case
cited.   We perceive no distinction in the circumstances
favorable to the defendant here.   In this case the examina-
tion by the plaintiff of the pass-book and vouchers alone
would not have disclosed the fraud, the debits in the
bank-book and the checks to Johnson corresponding with
them, he would expect to find.   If he had gone further and
compared the checks with Johnson's account on his books,
the fraud would have been detected, and probably by this
means only.   If his own name had been forged as in *Weisser*
v. *Denison, Prest, etc.*, or if items were debited in his pass-
book which he had no reason to expect to find there, an
examination of the book and the vouchers would be much
more likely than in this case to lead to a discovery.   The
plaintiff had a right to assume that the bank before paying
the checks would ascertain the genuineness of the indorse-
ments.   He was deceived into giving the checks by the fraud
of Swindels, but this act did not affect the action of the bank,
nor in a legal sense did it contribute to the fraud perpetrated
upon the defendant.   The fraud committed upon the plaintiff

and upon the bank were independent and unconnected frauds, and the fact that the plaintiff entrusted the checks to his clerk to send to Johnson, who forged the indorsements, made him no more responsible than if he had entrusted them to an expressman to carry to Johnson, and the expressman had forged the name of the payee, and passed them to the defendant. This is not the case of checks payable to a fictitious payee. The payee was a real person, and they were made for his use, and in payment of a supposed debt owing by the drawer.

The judgment should be affirmed.

All concur, except CHURCH, Ch. J., not voting.

Judgment affirmed.