Morris Frank et al., Respondents, v. The Chemical National Bank of New York, Appellant.

When forged checks have been paid by a bank, charged in the depositor's account, and returned to him, he owes no duty to the bank to so conduct an examination of these vouchers that it will necessarily lead to a discovery of the fraud, at most, all that is required of the depositor is ordinary care, and if this is exercised by him or his agent, the bank cannot justly complain although the forgeries are not discovered until too late to enable it to retrieve its position or make reclamation from the forger.

Where, therefore, checks forged by plaintiffs' confidential clerk, who filled out their checks and had charge of their bank account, were paid by defendant, charged to plaintiffs in their pass-book, the book balanced and the checks, including those forged, returned to the clerk, who assisted one of the plaintiffs in examining the account, which examination was made whenever the pass-book was written up and vouchers returned, and the clerk by abstracting the forged vouchers and by false balances and readings, prevented the forgeries from being discovered. *Held*, that plaintiffs were not estopped from questioning the accuracy of the account; and that defendant was liable for the balance, deducting the forged checks.

(Argued December 7, 1880; decided March 1, 1881.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of November, 1879, affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Reported below, 13 J. & S. 452.)

This action was brought by plaintiffs who composed the firm of Frank & Hirsh, to recover a balance alleged to be due upon their deposit account with defendant. The facts appear sufficiently in the opinion.

*Charles Jones* for appellant. If it be assumed that a depositor in a bank owes no duty to the bank which requires him to examine his pass-book or vouchers with a view to the detection of forgeries, still he is not free from all duties to the bank, nor are his acts without effect upon the relations of the parties. (*Weisser's Administrators* v. *Denison, President,* 10 N. Y. 68; *Welsh* v. *The German-Am. Bk.,* 73 id. 421.) The relation of a bank and its depositors is simply that of debtor and creditor. (*Ætna Nat. Bk.* v. *Fourth Nat. Bk.,* 46 N. Y. 82.) Between debtors and creditors the account may, by the acts of the parties, become an account stated, and the same principles which govern such an account between persons apply to a bank and its depositor. (*Hutchinson* v. *The Market Bk. of Troy,* 48 Barb. 302; *Lockwood* v. *Thorne,* 11 N. Y. 170.) An estoppel *in pais* is established when it is shown that the person sought to be estopped has made an admission or done an act that he had reason to believe would influence the conduct of another, or which a sensible man would take to be true and believe that it was meant he should act upon it; that the other party has acted upon it, or was influenced by such act or declaration, and that the other party will be prejudiced by allowing the truth of the admission or act to be disproved. (*Bowen* v. *Bowen,* 30 N.Y. 519, 541; *Continental Nat. Bk.* v. *Nat. Bk. of Comm.,* 50 id. 575; *Manf. & T. Bk.* v. *Morris Hazard,* 30 id. 226; 30 id. 226; *Blair* v. *Wait,* 69 id. 113.) It is not necessary to show that a demand from plaintiff's clerk or a suit against him would have resulted in the recovery of the money. (*Voorhis* v. *Olmstead,* 66 N. Y. 113, 118; *Knights* v. *Wiffen,* L. R., 5 Q. B. 660; Bigelow on Estoppel, 497; *Cont. Nat. Bk.* v. *Nat. Bk. of Comm.,* 50 N. Y. 575.) As between plaintiffs and defendant if Goodheim did any wrong acts the plaintiffs, who put it in his power to injure defendant, should be the persons to suffer by his wrongful acts. (*Griswold* v. *Haven,* 25 N. Y. 575.)

*B. F. Watson* for respondents. Assuming this to be the case of two innocent parties, it is settled law that the bank must suffer for the payment upon forged signatures, unless the plaint-

iff was guilty of gross carelessness. (*Leavitt, Prest., etc.,* v. *Stanton, Prest, etc.,* Hill & Den. Supp. 963; *Weisser* v. *Denison,* 10 N. Y. 68; *Frank et al.* v. *The Chemical Bank,* 37 N. Y. Sup. Ct. 27; *Bank of Commerce* v. *Union Bank,* 3 Comst. 230; *Goddard* v. *Merch. Bank,* 4 id. 147.) A settled account may be impeached by proof of unfairness or mistake in law or fact. (*Manhattan Co.* v. *Lydig,* 4 Johns. 377; *Sherman* v. *Sherman,* 2 Vern. 276; *Philips* v. *Belden,* 1 Edw. Ch. 1; *Kinsman* v. *Barker,* 14 Ves. 579; *Bullock* v. *Boyd,* 2 Edw. Ch. 293; *Baron* v. *Rhinelander,* 1 Johns. Ch. 550; *Perkins* v. *Hart,* 11 Wheat. 237; 1 Story's Eq. Jur., §§ 523, 528, 529; *Hall* v. *Hase,* 10 Mass. 40; *Salem Bank* v. *Gloucester,* 17 id. 1.) If it be conceded that the three or four settlements of the deposit book and returning the vouchers amounted to an account stated between the parties, yet the effect is merely to cast the burden of proof upon the plaintiff to show errors or mistakes in the accounts. (*Weisser* v. *Denison,* 10 N. Y. 68; *Lockwood* v. *Thorne,* 11 id. 170.) The principle that notice to an agent is notice to the principal is only applicable to cases in which the agent is acting in the course of his employment. (*Foster* v. *Essex Bank,* 17 Mass. 478; *Lewis* v. *Read,* 13 Mees. & Wels. 834; *Lyons* v. *Martin,* 8 Adol. & Ellis, 512; *Schmidt* v. *Blood,* 9 Wend. 268; *Vanderbilt* v. *Richmond Turnp. Co.,* 2 Comst. 479.)

Andrews, J. The plaintiffs' firm were depositors with the defendant, and between the 13th of July, 1869, and the 26th of September, 1870, their deposits, together with the balance to their credit at the former date, amounted to $335,597.67, and during the same period the defendant paid out upon their checks $323,914.01. The defendant has since paid the plaintiffs $3,502.08, leaving a balance of $8,181.58 remaining due from the defendant, unless the plaintiffs are chargeable with thirty-seven forged checks, purporting to have been drawn by them at various dates between July 13, 1869, and September 26, 1870, paid by the bank and charged to their account, amounting in the aggregate to that sum.

The plaintiffs were merchants doing business in the city of New York, under the name of Frank & Hirsch, and the evidence tends to show that the forgeries were committed by one Goodheim, their book-keeper. The firm kept a check book, in the margin of which all checks drawn by the firm were entered. The checks were filled up by Goodheim, but in all cases genuine checks were signed by one of the plaintiffs. Goodheim had charge of the bank account. The plaintiffs had a pass-book, in which the bank entered the deposits, and every quarter-day, or soon thereafter, the pass-book was delivered by the plaintiffs to the bank, for the purpose of having their checks entered therein and a balance struck. This was done on four occasions subsequent to July 13, 1869, and the bank on each occasion entered separately in the pass-book the amount of each check paid, including the forged checks, and struck a balance and then returned the pass-book with the vouchers to the plaintiffs. But in all this matter, Goodheim acted for the plaintiffs. He delivered the book to the bank and received it again after it was written up, with the vouchers. The plaintiffs, on each occasion after the pass-book had been written up and the vouchers returned, made an examination of the account, by comparing the checks returned to them by Goodheim with the memorandum of checks in the margin of the check-book, and the balance in the pass-book, with the balance appearing in the check-book, and on each occasion they were found to correspond. The plaintiff Frank then compared the checks with the entries in the pass-book, by having Goodheim read the entries while he had the checks, and no discrepancy appearing, the account was deemed to be correct and was not further examined. It very clearly appears that Goodheim, by abstraction of the forged vouchers and by false balances and readings, deceived the plaintiffs and prevented them from ascertaining, by means of the examination as conducted by them, the true state of the account and the fact of the forgeries. Goodheim absconded in September, 1870, and soon afterward the plaintiffs discovered three of the forged checks among the checks then in possession of the bank. This

led to further examination and the discovery of the other forgeries. Thirty-four of the checks charged in the account of the bank, claimed to be forged, which had been returned by the bank, were not found or produced on the trial. The inference from the evidence is, that they had been carried away or destroyed by Goodheim.

The recovery by the plaintiffs is sustained by the decision in *Weisser's Adm'rs* v. *Denison* (10 N. Y. 68). It is unnecessary to restate at length the grounds of that decision, which are fully set forth in the opinion delivered in that case. The principle that a bank cannot pay out the money of a depositor on forged checks and debit them to his account is clear enough. It is equally clear that it makes no difference that the forgery was committed by a confidential clerk of the depositor, who by his position had unusual facilities for perpetrating the fraud and imposing the forged paper upon the bank. It is, however, strenuously contended by the learned counsel for the defendant that where, as in this case, a pass-book is kept, which is balanced from time to time and returned to the depositor with the vouchers for the charges made by the bank, including forged checks, the latter is under a duty to the bank to examine the account and vouchers, with a view to ascertain whether the account is correct. It does not seem to be unreasonable, in view of the course of business and the custom of banks to surrender its vouchers on the periodical writing up of the accounts of depositors, to exact from the latter some attention to the account when it is made up, or to hold that the negligent omission of all examination may, when injury has resulted to the bank, which it would not have suffered if such examination had been made and the bank had received timely notice of objections, preclude the depositor from afterward questioning its correctness. But where forged checks have been paid and charged in the account and returned to the depositor, he is under no duty to the bank so to conduct the examination that it will necessarily lead to the discovery of the fraud. If he examines the vouchers personally and is himself deceived by the skillful character of the

forgery, his omission to discover it will not shift upon him the loss which in the first instance is the loss of the bank. Banks are bound to know the signatures of their customers, and they pay checks purporting to be drawn by them at their peril. If the bank pays forged checks, it commits the first fault. It cannot visit the consequences upon the innocent depositor, who after the fact, is also deceived by the simulated paper. So if the depositor, in the ordinary course of business, commits the examination of the bank account and vouchers to clerks or agents, and they fail to discover checks which are forged, the duty of the depositor to the bank is discharged, although the principal, if he had made the examination personally, would have detected them. The alleged duty, at most, only requires the depositor to use ordinary care; and if this is exercised, whether by himself or his agents, the bank cannot justly complain, although the forgeries are not discovered until it is too late to retrieve its position or make reclamation from the forger. In this case Goodheim was the criminal. His position enabled him to deceive the plaintiffs as well as the bank, and to postpone the detection of his frauds. The plaintiffs seem to have taken unusual care in the examination of the bank account. It was only because Goodheim was the criminal, that the examination did not disclose to them the forgeries. He was not the plaintiffs' agent in issuing the forged paper, nor was he their agent in abstracting the false vouchers and falsifying the books, which was done in aid of his criminal purpose. The plaintiffs did nothing to deceive the defendant, nor, so far as appears, did they omit to do any thing which ordinary prudence required. The bank, in paying the successive checks, did not act upon the fact that a previous forged check has passed the plaintiffs' scrutiny unchallenged. In each case the bank paid the check presented because upon inspection it supposed it to be genuine. If the forged checks first returned had been immediately ascertained to be forgeries, it might and probably would have prevented the subsequent forgeries. But the failure to detect them was not the reason of the subsequent payments by the bank. We are of opinion

that upon the facts found there is no estoppel. The loss must fall upon one of the parties, and it must, we think, be borne by the bank.

There are some exceptions to evidence. So far as they were considered in the opinion below, they are satisfactorily answered. We find none which would justify a reversal of the judgment.

The judgment should be affirmed.

All concur.

Judgment affirmed.