[L. A. No. 4898.   Department One.—June 19, 1919.]

## LOS ANGELES INVESTMENT COMPANY (a Corporation), Appellant, v. HOME SAVINGS BANK OF LOS ANGELES (a Corporation), Respondent.

[1] BANKS AND BANKING — PAYMENT OF CHECKS — FORGED INDORSEMENT.—The undertaking of a bank is to pay out the depositor's money only on the order of the depositor and in accordance with that order, and if it pays out money on a check drawn to order upon a forged indorsement of the payee's name, it has not paid in accordance with the depositor's order, and, in the absence of anything further, has no right to charge such payment against the depositor's account.

[2] ID.—PAYMENT OF CHECK ON FORGED INDORSEMENT—LIABILITY OF BANK—WANT OF NEGLIGENCE IMMATERIAL.—Where a bank pays a check on a forged indorsement, it is wholly immaterial whether the bank is negligent or not in making payment, since the obligation of the bank is not merely to use reasonable care to pay on the depositor's order and in accordance therewith, but its undertaking and obligation are absolute that it will pay only in that manner.

[3] ID.—FICTITIOUS PAYEE—WHEN NOT PAYABLE TO BEARER.—While it is true that paper drawn to the order of a fictitious payee is payable to bearer, it is also true that paper is not considered as drawn to a fictitious payee where the maker did not know it to be so drawn but believed the payee designated to be an existing person.

[4] ID.—DRAWING OF CHECKS BY CORPORATION—FORGED INDORSEMENT BY EMPLOYEE—LIABILITY OF BANK.—Checks of a company cannot be considered fictitious as to the company, so as to justify the

bank on which they are drawn in paying them as checks payable to bearer, notwithstanding the payees were all fictitious, where such payees were not known to the officers of the company who executed the checks to be fictitious, but such officers believed the payees named to be existing persons who were to receive the checks, notwithstanding the fictitious character of the payees was known to the officer of the company at whose instance the checks were executed.

[5] BANKS AND BANKING—PAYMENT OF CHECKS ON FORGED INDORSEMENTS—NEGLIGENCE IN DRAWING OF CHECKS IMMATERIAL TO LIABILITY OF BANK.—Negligence of the depositor in the signing of checks upon fraudulent demands will not relieve the bank of liability for paying them on forged indorsements, since the negligence of the depositor in such particular is not a proximate cause of the bank's failure to ascertain the nongenuine character of the indorsements.

[6] ID.—INDORSEMENTS ON CANCELED CHECKS—MAKER NOT CHARGED WITH DUTY.—A depositor is not bound to examine the indorsements on returned checks, since he has the right to assume that the bank has ascertained the fact that the indorsements are genuine.

[7] ID.—RENDITION OF SEMI-MONTHLY STATEMENTS — ACCOUNT STATED —RIGHT TO OPEN FOR FRAUD OR MISTAKE.—While the rendition of semi-monthly statements by a bank to a depositor and his failure to object thereto constitute an account stated, the account may be opened upon a showing of fraud or mistake.

[8] ID.—AGREEMENT IN PASS-BOOK—GENUINENESS OF INDORSEMENTS ON CANCELED CHECKS—WHEN NOT BINDING UPON DEPOSITOR.—A statement printed in the front of the commercial pass-book of a bank depositor to the effect that the latter shall be concluded as to the genuineness of indorsements on returned and canceled checks unless he makes an objection thereto in writing within ten days after their receipt, is not binding on the depositor, where not signed by him, or shown to have been called to his attention, or otherwise to have been agreed to by him.

[9] ID.—RECOVERY OF MONEY PAID ON FORGED CHECKS—TENDER OF CHECKS — WHEN UNNECESSARY.—In an action by a depositor against a bank to recover the amount paid out by the bank on checks of the plaintiff on forged indorsements, it is not necessary to tender back the checks before the commencement of the action where the bank from the time it was notified of the forgeries absolutely repudiated liability.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

Flint & Jutten and L. W. Jutten for Appellant.

Herbert J. Goudge, Charles L. Chandler and Goudge, Robinson & Hughes for Respondent.

OLNEY, J.—This is an action to recover $16,009.20, the aggregate of certain checks drawn by the plaintiff upon its deposit account with the defendant bank and paid by the latter on forged indorsements. The defendant had judgment in the court below and the plaintiff appeals.

The material facts are not in dispute, and are these:

The plaintiff is a large concern in Los Angeles, engaged in many lines of the real estate business. Among other activities it acted as a solicitor and broker of fire insurance, and had a separate department for attending to this class of business. The manager of this department was one F. R. Emory. As might be supposed, the business of the department required the constant making of disbursements, which were made by check. Emory had no authority to sign checks, and the method of obtaining them was for the insurance department to prepare a demand or requisition for the payment, showing what it was for and to whom it was to be made. This requisition was then transmitted to the accounting department, where it was examined and, if found correct, approved and entered on the plaintiff's books. A check in accordance with the demand was then prepared and presented with the approved demand to the officers authorized to sign checks. Upon being signed, it was returned to the insurance department for delivery to the party to whom payment was to be made. So far as appears, there would seem to be no substantial difference between the system adopted by the plaintiff for the signing of checks and making of disbursements and those followed by most large concerns.

Beginning with February 17, 1914, and ending September 11, 1915, Emory prepared a series of some twenty demands on behalf of his department for checks in payment of ostensible claims against the company which did not in fact exist. Several of the demands gave a purely fictitious name as the name of the party to be paid. In the other cases the name of a person known to Emory was used, but such person had nothing whatever to do with the matter, was utterly ignorant of it, and Emory had no intention of making any payment to him. The demands in some cases appeared to be for return

of premiums. In the other and the majority of cases they appeared to be in settlement with an agent for premiums collected by the company.

Checks were signed by the officers of the company in accordance with these demands and returned to Emory for delivery to the ostensible payees. Upon their receipt, Emory indorsed them in the name of the ostensible payees, then indorsed his own name, and secured their payment, in most cases by direct presentation to the defendant, and in other cases through other banks.

In addition to the twenty checks so signed upon false demands, there was one check signed upon a *bona fide* demand and in favor of a genuine payee, which Emory, instead of delivering, realized upon in similar fashion by forging the payee's indorsement.

During the period between the first and the last of these checks, the bank sent the usual bank statement with canceled checks to the plaintiff every half month, the statement specifying that claims or exceptions must be made within ten days or the account would be considered correct.

[1] The general rule must be conceded that the undertaking of a bank is to pay out the depositor's money only on the order of the depositor and in accordance with that order. If it pays out money on a check drawn to order, as were the checks in this case, upon a forged indorsement of the payee's name, it has not paid in accordance with the depositor's order, and, in the absence of anything further, has no right to charge such payment against the depositor's account.

To escape from the operation of this elementary rule, the bank advances five defenses:

First, that it was not negligent in paying on the forged indorsements.

Second, that the checks were drawn to fictitious payees and were, therefore, in effect, payable to bearer, with the result that the payments to Emory, who was the bearer, were in accord with the terms of the depositor's order.

Third, that the depositor was guilty of negligence which induced or contributed to the payments and therefore was estopped from insisting on the responsibility of the bank.

Fourth, that the rendition of the half-monthly statements to the plaintiff and the latter's failure to object thereto con-

stituted a stated account between the parties which could not be gone behind.

Fifth, that the plaintiff had not offered to return the checks in question, and this was a condition precedent to its right of recovery.

[2] In regard to the first defense, want of negligence on the part of the bank, it is evident on very slight consideration that it is wholly immaterial whether the bank was negligent or not in paying on the forged indorsements. The obligation of the bank is not merely to use reasonable care to pay on the depositor's order and in accordance therewith. Its undertaking and obligation are absolute that it will pay only in that manner. If we have the simple case of a payment on a forged indorsement without anything further, it makes no difference how careful the bank was in making payment or how impossible of detection the forgery was. That is a risk which the bank and not the depositor assumes. (3 R. C. L., p. 542; 1 Morse on Banks & Banking, sec. 474; *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 38, [41 L. R. A. (N. S.) 529, 124 Pac. 704].)

[3] As to the second defense, it is true that paper drawn to the order of a fictitious payee is payable to bearer, and if the checks here are of that character, the bank was justified in paying them. But it is also true that paper is not considered as drawn to a fictitious payee where the maker did not know it to be so drawn but believed the payee designated to be an existing person. (8 Corpus Juris, 179; *Hatton* v. *Holmes,* 97 Cal. 208, [31 Pac. 1131].)

It is also true that the payee named in several of the checks had no existence in the mind of Emory, and that the payees named in all of the others with one exception—that prepared on a *bona fide* demand—were persons to whom Emory did not intend the checks to come. As to Emory, the payees, with the single exception noted, were all fictitious. The question is, Were they fictitious as to the plaintiff company?

The answer to this question obviously depends upon whether Emory's intention that the checks be made payable to persons who were not to receive the paper, who were nonexistent so far as the checks were concerned, is attributable to the company. The bank's counsel in their brief say: "But appellant did intend something when it issued the checks. What was it? It intended that the money be paid to the per-

606    Los Angeles Inv. Co. v. Home Sav. Bank.    [180 Cal.

son to whom Emory intended it to be paid—and the money was so paid.''

This is the very crux of the matter. But is it true? [4] Plainly it is not. Emory did not execute the checks on behalf of the company. It is the intention of the officers who did that must be taken to be the intention of the company. The execution of the checks was one within the scope of their authority, not within that of Emory. As to these officers, it is plain that they did not intend to execute checks to fictitious parties or to pay money to the person to whom Emory intended it should be paid, to wit, himself. They intended to pay money to what they believed to be existent persons, and this being so, the checks cannot be considered as made to fictitious payees.

Nor is the company bound by the guilty knowledge of Emory. That knowledge was adverse to his company and such as in the nature of things he would not communicate to it. It is elementary that a principal will not be charged with knowledge of an agent under such circumstances. (*Henry* v. *Allen,* 151 N. Y. 1, [36 L. R. A. 658, 45 N. E. 355]; *United etc. Co.* v. *Central etc. Bank,* 185 Pa. St. 586, [40 Atl. 97].) This, of course, is very different from an agent binding his principal by acts done within the scope of his authority, although done with knowledge and intent adverse to his principal, and we have no intention of saying that an agent may not bind his principal under such circumstances. It may well be that in this case, if Emory had had authority to draw checks, and had drawn these particular ones making them payable to fictitious payees, his intent in this respect would, in legal effect, as to third persons be the intent of the company, although such intent was adverse to the company and part of a scheme to defraud it. But charging a principal with knowledge merely because such knowledge is possessed by an agent, and charging him with acts done by the agent within the scope of his authority, are not the same thing, and it is only in the latter case that the principal may be bound by the uncommunicated information or intent of the agent when such information or intent is hostile to the principal. The point in this case is that the checks were not executed by the guilty agent; we are not concerned with an act done by him within the scope of his authority, and, therefore, his guilty intent and knowledge are not the intent and knowl-

edge of his principal. The intent and knowledge of the principal was, as we have said, that of the officers who drew the checks, and they were wholly innocent of any intention of drawing checks to fictitious payees.

There is eminent authority to sustain the foregoing views. In *Shipman* v. *Bank,* 126 N. Y. 318, [22 Am. St. Rep. 821, 12 L. R. A. 791, 27 N. E. 371], the facts and contentions are practically identical with those of the case at bar. One Bedell, an employee of the plaintiffs and in charge of their real estate department, secured from time to time checks of the plaintiffs with which to pay parties whom Bedell represented were borrowing money from or through the plaintiffs. Some of these alleged borrowers were real persons, who were not, however, borrowing any ·money and to whom Bedell had no intention of delivering the checks. Others were nonexistent persons. The checks were in each case made payable to the order of the alleged borrower. Bedell, on receiving the checks, forged the names of the ostensible payees, and had the checks presented to the defendant bank on whom they were drawn, which paid them. The amount involved was very large, and the case was elaborately presented and argued by eminent counsel. In reply to the contention that the checks were payable to fictitious persons and therefore to bearer, the court said (126 N. Y. 330, 331, [22 Am. St. Rep. 821, 12 L. R. A. 791, 27 N. E. 374]):

"It is claimed by the defendant that the sixteen checks made payable to the order of persons having no existence were, in legal effect, payable to bearer. It is provided by statute that paper made payable to the order of a fictitious person and negotiated by the maker has the same validity 'as against the maker and all persons having knowledge of the facts, as if payable to bearer.' (1 R. S. 768, sec. 5.)

"We are of the opinion, upon examination of the authorities cited by counsel on both sides, that this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person. (*Irving Nat. Bank* v. *Alley,* 79 N. Y. 536; *Turnbull* v. *Bowyer,* 40 N. Y. 456, [100 Am. Dec. 523];

*Vagliano* v. *Bank of England,* L. R. 22 Q. B. D. 103; S. C. on appeal, 23 Q. B. 243; *Armstrong* v. *Pomeroy Nat. Bank,* 46 Ohio St. 512, [15 Am. St. Rep. 655, 6 L. R. A. 625, 22 N. E. 866]; 7 Railway and Corporation Law Journal, 114; *Gibson* v. *Minet,* 1 H. Black. 569.)

"The findings of the referee that the plaintiffs in good faith believed that the names of the payees represented real persons, entitled to receive from them the amount of the checks in each case, having been led to believe this by the fraudulent contrivance of Bedell, and that they intended that Bedell should deliver the check to a real payee therein named and that they did not intend that they should go into circulation or be paid by defendant otherwise than through a delivery to and indorsement by the payee named; and that plaintiffs gave no authority to Bedell to indorse the name of the payee, or to put the checks into circulation, and that no one in fact relied on any appearance of authority, derived from the plaintiffs, in Bedell to indorse the payee's name upon the checks or to put them in circulation, disposes of this question. The indorsement of the names of the fictitious payees upon the checks, with intent to deceive and to put the checks in circulation, constituted the crime of forgery by means of which, and without any fault of the plaintiffs, payment was obtained thereon. The defendant does not occupy any different position with reference to the checks payable to fictitious payees than it does with reference to those payable to real parties whose indorsements were forged.

"Bedell of course knew that the payees were fictitious, but he was not acting within the scope of his employment, but in carrying out a scheme of fraud upon the plaintiffs, and under such circumstances his knowledge cannot be imputed to his principals. (*Frank* v. *Chemical Nat. Bank,* 84 N. Y. 209, [38 Am. Rep. 501]; *Weisser* v. *Denison,* 10 N. Y. 68, [61 Am. Dec. 731]; *Welsh* v. *German American Bank,* 73 N. Y. 424, [29 Am. Rep. 175]; *Cave* v. *Cave,* L. R. 15 Ch. Div. 643, 644.)"

Identical facts and contentions also appear in *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 408, [87 N. E. 740, 743, 22 L. R. A. (N. S.) 250]. Upon the point under immediate discussion the court said:

"The question arises whether the making of a check payable to a fictitious or nonexisting person, through neg-

ligent failure to discover the fraud by which the check is obtained, stands differently from making a check to an actual person, in reference to its effect upon payment by the defendant. We are of opinion that there is no difference in law. In either case it is the duty of the bank to see that there is a genuine indorsement. In some respects it would be more difficult to deceive a bank in this particular, as against vigilant investigation, if the payee was fictitious than if he were real. In some respects it might be less difficult. We know of no decision that has recognized a difference in law between the two cases. It has been held that there is no difference. (*Armstrong* v. *National Bank,* 46 Ohio St. 512, [15 Am. St. Rep. 655, 6 L. R. A. 625, 22 N. E. 866].)''

To the same effect is *United States* v. *National Bank of Commerce,* 205 Fed. 433, [123 C. C. A. 501].

The bank's counsel rely largely to sustain their position upon two decisions, *Phillips* v. *Mercantile Nat. Bank,* 140 N. Y. 556, [37 Am. St. Rep. 596, 23 L. R. A. 584, 35 N. E. 982], and *Snyder* v. *Corn Exchange Bank,* 221 Pa. St. 599, [128 Am. St. Rep. 780, 70 Atl. 876]. The facts in these two cases were much the same as those in the case at bar, with a very important exception, viz., that the dishonest employee had authority to draw checks and did himself draw the very checks in question. In both cases the decision is put upon this ground and on this ground distinguished from *Shipman* v. *Bank,* 126 N. Y. 318, [22 Am. St. Rep. 821, 12 L. R. A. 791, 27 N. E. 371].

As to the third defense, that the plaintiff was guilty of negligence which induced or contributed to the payment of the checks by the bank, the only negligence claimed is in the officers of the plaintiff signing the checks on the false demands or requisitions of Emory, and in the failure of the plaintiff to discover the forgeries more promptly. The lower court found such negligence, and it is urged upon us that the question being one of fact is concluded on appeal by such finding. This is not true, of course, if there is no conflict in the evidence (and there is none), and the conclusion of negligence is one which cannot reasonably be drawn from the probative facts put in evidence. We are much inclined to the opinion that negligence cannot be reasonably inferred from the probative facts in this case. The company had rather an elaborate system of approving, checking, and enter-

ing demands before checks were drawn to pay them. It was, as we have said, very similar to the systems found in other large corporations. Complaint is chiefly made that the company relied upon the honesty of its heads of departments and the regularity on their face of the demands or requisitions which such heads approved, and made no investigation to determine whether such demands were fraudulent or not. But trust must be placed in someone (*Kohn* v. *Sacramento etc. Co.*, 168 Cal. 1, [141 Pac. 626]; *The Yamato* v. *Bank of Southern California*, 170 Cal. 351, [149 Pac. 826]), and necessarily in heads of departments. If trusting them in regard to demands for checks for disbursements regular upon their face is negligence, so it would be negligence to trust them in a hundred other ways in which it is within their power to defraud their employer. Business could not be conducted on any such basis. It is impossible for any large concern to investigate minutely in advance every demand for disbursement necessary for it to make in its daily business. The delay and expense of so doing would be too great.

[5] But however this may be, even if the company were guilty of negligence in signing the checks upon the fraudulent demands of Emory, it is plain that such negligence did not contribute to or induce the acceptance by the banks of the forged indorsements. The forgery of the indorsements was entirely distinct from the issuance of the checks on false demands, and there was no relation between them. This is clearly shown by the fact that Emory could just as easily have forged indorsements on and secured the payment of checks issued on genuine demands, and in fact did so in one instance.

This point also is discussed in *Jordan Marsh Co.* v. *National Shawmut Bank, supra,* and the matter is there summed up as follows (201 Mass. 408, [22 L. R. A. (N. S.) 250, 87 N. E. 742]): ''But the whole duty of seeing whether there is a forgery of such an indorsement upon any check rests primarily upon the banker. The drawer of the check has nothing to do with that. Ordinarily, he makes no representation that has any relation to it. In the case just supposed he made no representation in regard to it. The checks payably to the order of A. L. Sefton, which she did not indorse, were wrongly paid, and the defendant's liability for payment is like that for the payment of any other check bearing such a forged

indorsement.  The plaintiff had nothing to do with the payment, or with the defendant's performance or nonperformance of its duty to see that payment was made to the right person.  There are many cases that illustrate the rule that negligence of the maker is immaterial unless it is of a kind that directly and proximately affects the conduct of the banker in the performance of his duties.  (Citing many cases.)''

The other particular in which it is claimed that the plaintiff was negligent is, as we have said, that the plaintiff did not examine more carefully the canceled checks as they were returned to it, and discover the forgeries earlier.  The plaintiff did indeed make some examination of the returned checks to see that the indorsements were regular.  [6]  But a depositor is not bound to examine the indorsements on returned checks.  He is bound within a reasonable time to ascertain the genuineness of the checks themselves (*Janin* v. *London etc. Bank,* 92 Cal. 14, [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100]), but as to indorsements, the rule and its reason are correctly stated in *Shipman* v. *Bank, supra.*

''The defendant's contract was to pay the checks only upon a genuine indorsement.  The drawer is not presumed to know, and in fact seldom does know, the signature of the payee.  The bank must, at its own peril, determine that question.  It has the opportunity, by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the indorsement is genuine or not.  When it returns the check to the depositor, as evidence of a payment made by his direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine.  (*Weisser* v. *Dennison,* 10 N. Y. 68, [61 Am. Dec. 731]; *Welsh* v. *German American Bank,* 73 N. Y. 424, [29 Am. Rep. 175]; *Frank* v. *Chemical Nat. Bank,* 84 N. Y. 209, [38 Am. Rep. 501]; *First Nat. Bank* v. *Whitman,* 94 U. S. 347, [24 L. Ed. 229]; *Leather Mfg. Bank* v. *Morgan,* 117 U. S. 107, [29 L. Ed. 811, 6 Sup. Ct. Rep. 657, see, also, Rose's U. S. Notes].)'' (See, also, *Jordan Marsh Co.* v. *National Shawmut Bank, supra; United etc. Co.* v. *Central etc. Bank,* 185 Pa. St. 586, [40 Atl. 97]; *German etc. Bank* v. *Citizens' etc. Bank,* 101 Iowa, 530, [63 Am. St. Rep. 399, 70 N. W. 769]; *Guaranty etc. Co.* v. *Lively* (Tex.

Civ.), 149 S. W. 211; *Masonic etc. Assn.* v. *First State Bank,* 99 Miss. 610, [55 South. 408].)

[7]    As to the fourth ground of defense, that there was an account stated between the parties by reason of the rendition of semi-monthly statements by the bank to the plaintiff and no objection made by the plaintiff, it is the rule that an account stated may be opened for fraud or mistake shown.  The mistake in this case is plain and the rule is as applicable to an account stated between a bank and a depositor as to any other.  (*Shipman* v. *Bank, supra; Jordan Marsh Co.* v. *National Shawmut Bank, supra; Janin* v. *London etc. Bank, supra;* 3 R. C. L. 532.)

A further question, however, presents itself upon this point. In the front of the pass-book used by the plaintiff up to June, 1914, is a printed statement headed, "Agreement with Depositor," and reading as follows (the italics are ours):

"In accepting this pass-book it is understood that the Globe Savings Bank in receiving notes, drafts, and checks on points other than Los Angeles, either for collection or credit, shall transmit the same in the usual manner for collection, either to the bank on which the same are drawn, or to such bank or persons as it may deem reliable, with the express understanding that the same is done solely for account and convenience of the depositor, and that the Globe Savings Bank shall in no way be liable for default of any such bank, person or subagents, or for loss in transit, or for any other cause whatever, until the proceeds in actual money shall come into its possession.

"It is also further expressly agreed and declared that it is a condition upon which the Globe Savings Bank accepts the deposits of, pays the checks of, and does business for the depositor herein named, that whenever this book may be written up by the said bank and returned to said depositor with checks drawn by said depositor on, and paid by said bank, and other vouchers, by personal delivery, messenger, mail or otherwise, said depositor shall, within ten days after receipt thereof, make such examination of the account and the returned vouchers and checks as will satisfy him (or her) of their correctness, genuineness, and regularity, both as to face and *indorsements,* and that a failure by said depositor to report in writing anything to the contrary to said bank within ten days after such delivery, shall be deemed positive and con-

clusive evidence that the examination as above has been made by said depositor, and that the account and checks and vouchers have been found correct in all the particulars above indicated, and that after the said ten days shall have elapsed without objection or notice to the said bank of errors or omissions, the said depositor shall not have the right as against the said bank to question or dispute the genuineness, regularity, or correctness of the said account, vouchers, or checks or any of them concerning the amount thereof, or the signatures or other writing on the face of said checks or the *indorsements,* or other writings on the back thereof.''

This statement is not signed by the plaintiff, nor is there any showing that it was called to the plaintiff's attention or wittingly agreed to by it. It is just the character of thing that the average man would not trouble to read, or reading would fail to appreciate the significance of the inclusion in it of "indorsements," and the fact that it very materially changed the usual obligation of a bank to its depositors. There is no reason, so far as we know, why a depositor may not make such an agreement if he deliberately chooses to do so, unreasonable as it is. But it is evident that the statement comes in the category of "traps for the unwary," and before such statement can be given effect as a contract binding upon the depositor and changing in a substantial particular the relation which presumably he thought he was entering into, it must appear affirmatively that he consented and agreed to it either by being required to sign it or by having his attention particularly called to it. It is not sufficient merely that it appear in the front of the pass-book. The case is not one in which the party must know that he is accepting a contract, as where he is accepting an insurance policy, and should therefore realize the necessity of acquainting himself with its terms. For this reason it does not come within the principle of such cases as *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204, [142 Pac. 51]. It is more nearly analogous to the case of special conditions or limitations printed on the back of a railroad ticket. It is also to be noted that probably the pass-book never came to the attention of any responsible officer of the plaintiff authorized to make contracts. The actual handling of the pass-book and the making of deposits is ordinarily in the case of large concerns intrusted to some subordinate. The case comes within the

principles discussed on pages 260 to 263 of 9 Cyc. and is not distinguishable from *Neuman* v. *National Shoe etc. Exch.*, 26 Misc. Rep. 388, [56 N. Y. Supp. 193], and *Ackenhausen* v. *People's etc. Bank,* 110 Mich. 175, [64 Am. St. Rep. 338, 33 L. R. A. 408, 68 N. W. 118].

[8] In order for the bank to avail itself of the statement as a contract made by the plaintiff, it was necessary for the bank to prove that the statement had been called to the attention of some responsible officer of the company. Without this it cannot be fairly said that it was accepted or consented to by the company, and nothing of this sort appears.

We are not unaware of the numerous authorities holding that a rule or regulation printed in a savings bank pass-book accepted by the depositor is binding upon him. Practically all, if not all, of these cases, however, are cases wherein either the circumstances were such that the consent of the depositor to the by-law reasonably appeared, or the bank was a mutual one, the members of which were the depositors who as members were bound by the bank's rules. In practically all of them also the rule involved was a reasonable and customary one, which presumably the depositor would be aware of as an ordinary incident of the relation of savings depositor and bank. The matter is discussed at some length in *Ackenhausen* v. *People's Savings Bank, supra,* and with that discussion we agree.

The fifth and last point of the respondent is that the checks were not tendered back to the bank before the commencement of the action. The facts regarding this are that immediately upon the discovery of the forgeries the plaintiff notified the bank in writing of that fact and that it held the bank responsible. Copies of the checks were attached to the notice. The complaint alleges a demand by the plaintiff for the amount of the checks and a refusal by the bank. This allegation is admitted by the answer. The answer also denies liability and sets up other affirmative defenses, but contains nothing whatever relative to any failure by the plaintiff to tender the checks. Apparently the point was not brought up in any manner at the trial, although at the opening of the trial the question of a demand by the plaintiff was discussed, and the bank's counsel admitted that such demand had been made. The first reference to the nonreturn of the checks is in the findings, which contain a finding that the plaintiff has not

returned or offered to return them. The conclusions of law contained in the findings, however, show that the decision for the defendant was not placed on this ground. **[9]** So far as the record shows, we believe it is a fair conclusion that the bank's position from the time it was notified of the forgeries has been one of an absolute repudiation of any liability. Under such circumstances, a tender of the checks would have been an idle ceremony, not changing in the slightest the existing positions of the parties, and therefore not required. (38 Cyc. 135.)

If, however, the record is not sufficient to justify an affirmative conclusion as to the bank's position from the time demand was made upon it, the bank cannot rely upon appeal upon the insufficiency of the record in this respect. It is clear that the point was not made at the trial, that the cause was tried on other issues entirely and as if this point were not present, and that the necessity of proving either tender or an excuse for it was not brought to the plaintiff's attention. Such a point, which the plaintiff might, and in this case in all probability could, have met by sufficient evidence if objection to its recovery had been made on this ground at the trial, cannot be raised for the first time on appeal. (*Bank of Stockton* v. *Howland,* 42 Cal. 129; *Richey* v. *Huley,* 138 Cal. 441, [71 Pac. 499].)

We have discussed this point as if a tender of the checks by the plaintiff to the bank were in fact necessary unless excused or waived. *Redington* v. *Woods,* 45 Cal. 406, [13 Am. Rep. 190], would seem so to hold. There is, however, strong authority to the contrary (see *United States* v. *National Bank of Commerce, supra,* and cases there cited), and we do not desire to be considered as conceding that a tender was in fact necessary.

Judgment reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Melvin, J., and Olney, J., who were absent.