## ELLIS WEAVING MILLS, Inc., v. CITIZENS & SOUTHERN NAT. BANK OF SPARTANBURG, S. C.

No. Civ. 993.

United States District Court
W. D. South Carolina,
Spartanburg Division.

Jan. 6, 1950.

944

Edwin W. Johnson, and Frank J. Bostick, both of Spartanburg, S. C. and John J. Tullman, of New York City, for plaintiff-appellant.

Daniel & Russell, and C. Erskine Daniel, all of Spartanburg, S. C., for defendant.

TIMMERMAN, District Judge.

The Court has for consideration defendant's motion "for summary judgment in its favor, on the ground that there· is no genuine issue as to any material facts". The motion is made upon the record, including the pleadings (complaint and answer), request for admissions and the responses thereto, and a certified copy of the complaint and answer in a certain previously instituted action pending in this court between Emily W. Ellis and Ellis Weaving Mills, Inc., as plaintiffs, and Catherine Culbertson, et al., as defendants.

The instant action is brought to recover the sum of $4,129.28 alleged to have been erroneously paid out of funds on deposit in defendant bank to plaintiff's credit.

The plaintiff is a corporation existing under the laws of the State of New York and is qualified to do business in South Carolina. It was organized in 1946 under the name of Kaye Weaving Mills, Inc., but its name was changed by amendment to its charter on . February 15, 1949 to Ellis Weaving Mills, Inc. The defendant is a national banking corporation engaged in banking business at Spartanburg, South Carolina. The plaintiff, for several years preceding this action, was a depositor with defendant, having its funds on checking account. The defendant paid out of the account of plaintiff the aggregate sum of $4,-129.28 on certain checks listed and described in paragraph 6 of the complaint, which plaintiff claims should not have been honored by the defendant because of forged endorsement.

The checks were drawn on the defendant bank by Catherine Culbertson, who, at the times these checks were issued and cashed, was the President and General Manager of plaintiff and its sole authorized agent to sign checks in plaintiff's behalf, and had been since its incorporation. The checks were made payable to various existing persons, principally to employees of plaintiff, to whom they were never intended to be delivered, and to whom they were not delivered. Instead Mrs. Culbertson, plaintiff's chief executive officer, endorsed the names of the ostensible payees on the backs of the checks and either cashed them or caused them to be cashed at the defendant bank or at some convenient mercantile establishment. The funds so received on said checks, as it is claimed by plaintiff, were privately retained by Mrs. Culbertson, its President and General Manager, or otherwise disposed of by her.

The plaintiff was incorporated with an authorized capital stock of 200 shares of non par value, 99 shares of which were issued· to Catherine Culbertson, plaintiff's

President and General Manager, and 101 shares to Emily W. Ellis, its Treasurer. After the alleged fraudulent withdrawals, Mrs. Culbertson assigned her stock to Emily W. Ellis, and thereafter plaintiff's name was changed. The plaintiff and Emily W. Ellis then brought the action referred to in the first paragraph hereof, and afterwards this action was brought.

The question for determination is whether or not there is any material issue of fact which should be submitted to a jury. The plaintiff contends that there is; its contention being that there is a question as to the manner in which the checks were presented to the defendant for payment and cashed by it. Plaintiff argues that the checks were not presented by Catherine Culbertson in person to the defendant but by a third party to a bookkeeper of defendant, one James Culbertson, a kinsman of Catherine Culbertson, who was not "an officer, cashier or teller of said defendant bank, but merely employed in the bookkeeping department of said Bank".

The answer to this argument is plaintiff's admission, for the purposes of this motion, that the "Purported payroll checks payable to various named employees [the same checks which form the basis of this action] were drawn by defendant, Catherine Culbertson, who forged the names of the payees, endorsing the checks, and collecting them through cashing them at various mercantile houses or presenting them to the Bank * * *." The foregoing is taken from the complaint in the case of Emily W. Ellis and Ellis Weaving Mills, Inc., v. Catherine Culbertson, et al.,[1] which was duly verified, and which is the same case referred to in the opening paragraph hereof.

The general rule as to liability of banks for erroneously or negligently cashing checks with forged endorsements is found in American Jurisprudence, Volume 7, Section 590, at page 427, as follows: "As between the drawer of a check and the bank upon which it is drawn, the latter is bound at its peril to determine the genuineness of the indorsements upon which it is paid, it cannot, *if the drawer is free from negli-*

*gence or conduct warranting his estoppel,* charge against the drawer's account a check payable to a named payee or his order and paid upon a forged indorsement. * * *" (Emphasis added)

Here the plaintiff bases its right of recovery upon several alleged wrongful acts of its President and General Manager, which, as is claimed by plaintiff, combined and concurred with an alleged wrongful act of one of defendant's employees acting without the scope of his employment. Obviously, if plaintiff's President and General Manager had not issued the checks, as she was authorized by plaintiff to do, and if this authorized agent of plaintiff had not endorsed the names of the ostensible payees of such checks on the backs thereof, and if this same authorized agent of plaintiff had not presented, or caused to be presented, the checks so endorsed to an allegedly unauthorized employee of the defendant bank for payment, the losses claimed by plaintiff would not have occurred. The *mere fact* that plaintiff's authorized agent elected to, and did deal with an unauthorized employee of the defendant bank doesn't change that result. In this situation the plaintiff is estopped to claim anything against the defendant bank by reason of the alleged conduct of its President and General Manager acting, as it appears, in the apparent scope of her authority, if not in the actual scope thereof. Moreover it was not the fact that the funds were withdrawn from the bank by plaintiff's chief executive officer that occasioned loss to plaintiff. The loss occurred, if it did occur, after the withdrawals had been made and by reason of their misapplication or misappropriation by plaintiff's President and General Manager. The plaintiff could act only through agents in the transaction of its business and in this instance it acted through its chief executive officer who had authority to bind it in its ordinary business dealings with the defendant and others. See Bourne v. Maryland Casualty Co., 185 S.C. 1, 192 S.E. 605, 118 A.L.R. 1.

Suppose the drawer of the checks had been an individual and that what is claimed

---

[1] No opinion for publication.

to have happened in the instant case had happened with him and the bank, Could he have then maintained an action against the bank to recover the amounts paid out by the bank on his own checks bearing endorsements he had placed thereon? Most certainly he could not. And does a corporation doing exactly the same thing, acting as only it can act, through an authorized agent, stand in any better position? I think not. Certainly the bank was not an insurer of the faithfulness of the authorized agent of the plaintiff.

The case of Glens Falls Indemnity Co. v. Palmetto Bank, 4 Cir., 1939, 104 F.2d 671, 673, which arose in this court, is quite similar to the instant case. There a cotton mill was being operated at Laurens, S.C., under the complete control and direction of its assistant treasurer, who had authority to write checks and to endorse checks made payable to the order of the mill. While acting under such authority, he took numerous checks to the bank, which had been endorsed by rubber stamp, "For deposit account of Watts Mills, Laurens, S. C.—C. S. Link, Jr., Assistant Treasurer", and asked for and received cash from the bank on such endorsements. He then appropriated some of the funds so received to his own use and benefit. The Insurance Company which was surety on the Assistant Treasurer's bond, and had paid the losses sustained by the mill, sought recovery against the bank for the losses so sustained. The Court, in an opinion by Judge Parker, said: "Under these circumstances we think not only that it was proper to deny plaintiff's motion for a directed verdict but also that verdict might properly have been directed for the defendant. There being no evidence that the bank had notice of any intended misappropriation by Link, the only question which arises is whether it was justified in dealing with him as representing the mill in cashing the checks. And we think that upon the evidence there can be no question as to this, whether consideration be had of the authority which Link was held out as possessing or only of his actual authority. *He was vested with complete control over the mill's business at Laurens and with the handling of its funds.* He was not, of course, authorized to convert the funds of the mill to his own use; but he was authorized to cash checks drawn to its order. *A payment to him, therefore, of a check payable to the mill was payment to the mill itself; and the effect of the payment as a valid acquittance to the bank for the check cashed was not changed by the fact that he may subsequently have embezzled the proceeds.*" (Emphasis added.)

This, we think, is ample authority to sustain the defendant's motion.

There is yet another reason why the motion should be granted. It is a point strongly urged by counsel for the defendant. Section 6760, Code of Laws of South Carolina, 1942, Negotiable Instruments Law, provides: "The instrument is payable to bearer: * * *

"(3) When it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable; * * *."

In an annotation in 118 A.L.R., at page 25, the following is stated: "Although a person bearing the name by which the payee is designated in the paper is in actual existence, the paper is payable to a fictitious payee and by legal intendment to bearer, where the person making or drawing it, or *his agent or employee whose knowledge or intent is imputable to the principal or the employer,* does not intend that he shall receive the same or its proceeds, or that it be paid to him or upon his endorsement. It follows that the mere fact that the payee named was an existing person does not preclude the application of the rule as to fictitious payee, where, although the existence of the payee was known to or believed by the maker, he, the maker, did not intend that he should receive the paper, or have an interest therein. Thus, an existing payee may be a fictitious payee." (Emphasis added.) Many cases are cited in support of the announced doctrine, including cases from United States Courts and the South Carolina Supreme Court. Cf., Bourne v. Maryland Casualty Co., supra.

Under the admitted facts of this case, it was never intended that the named payees of said checks should receive the

checks or the proceeds thereof. This case falls squarely within the principle announced in the cited annotation, and the authorities cited thereunder. Thus the checks were, as a matter of law, payable to bearer and the defendant bank properly paid out funds thereon when presented, especially when the person to whom payments were made, or for whose benefit they were made, was the one authorized to issue the checks and the one who endorsed the names of the ostensible payees on the backs thereof and put them into circulation.

Plaintiff's counsel, while conceding that Catherine Culbertson was the only person authorized to sign plaintiff's checks and that she signed the ones here in question, argues that plaintiff's grievance is not that she signed and uttered said checks, but rather that the bank paid the checks upon forged endorsements of the named payees. That argument is sound as far as it goes, but it overlooks other material facts, viz., that when the checks were issued it was not intended that they should be delivered to the named payees or that the named payees should receive any benefits thereunder, and that the forged endorsements were placed on the checks by the one issuing them, or at her direction, before they were ever placed in circulation, or were caused to be placed in circulation, by her. When such additional facts are considered it becomes apparent that they were efficient causes of plaintiff's claimed losses, without which they would not have occurred. That grossly wrongful conduct on the part of plaintiff's President and General Manager is not erased, nor are its evil consequences eradicated, by the fact that she may not have personally presented the checks to the bank for payment, or by the additional fact that she may not have assured the bank personally that the endorsements were good. She in effect did all that when she caused the checks to be put into circulation, after the forged endorsements had been entered on them, in the expectation that they would be honored by the bank.

Plaintiff relies on Los Angeles Investment Co. v. Home Saving Bank, 180 Cal. 601, 182 P. 293, 5 A.L.R. 1193, but if that case should be accepted as controlling authority on the issue there decided, it does not reach the point in this case. In that case the negligent conduct asserted as a defense was that of a subordinate employee of the plaintiff. The official who signed the checks for the plaintiff did so in good faith and released them in the full expectation that they would be delivered to and used by the named payees. After that had been done, a subordinate abstracted the checks and forged the endorsements, and then presented them to the bank for payment. That is not the case here. What was done in the instant case was done by the chief executive officer of the plaintiff, or by her direction, and before the checks were put into circulation.

The plaintiff also invokes the rule laid down in 7 Am.Jur., page 430, section 593, as follows: "* * * It is also established that where an employee or agent fraudulently procures his employer or principal to issue checks payable to fictitious persons, not known to the employer or principal to be fictitious, or to persons not having an interest in the proceeds of such checks, and cashes the same upon the forged indorsement by him of the names of such persons, the loss falls upon the drawee bank cashing them. This rule, however, presupposes that the drawer himself was not negligent or guilty of such conduct as would estop him from asserting the forged character of the indorsement; if he was negligent or guilty of such conduct, the loss must fall on him, provided such negligence or conduct was the proximate or inducing cause of the payment by the drawee upon the forged indorsement."

The general rule stated in the first sentence of the foregoing is, of course, qualified by its second sentence, under which the conceded facts of this case fall. Clearly plaintiff's own wrongful conduct, acting through its chief executive officer, in the execution of a power vested in her, was the primary and efficient clause of the losses claimed and without which they would not have occurred. Moreover, plaintiff's authorized agent did not issue the checks to fictitious persons, not knowing they were fictitious. She knew that the named payees were fictitious and that they would take

nothing by the checks when she issued them and caused them to be presented for payment.

It is hard to understand how the plaintiff is in any better position to maintain this action than it would have been if its President and General Manager had simply made the checks payable to herself or bearer, without valid claims to support them, and had then caused them to be cashed by the defendant bank. In any such event the plaintiff's losses would be the same and they would be attributable to the wrongful conduct of its authorized agent while acting within the clearly apparent scope of her authority.

For the reasons stated defendant's motion should be granted; and it is so ordered.